Filed 2/24/17  Modified and certified for publication 3/15/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| Y.R., | B266621 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. Nos. BF051758) |
| v. | |
| A.F., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, B. Scott Silverman, Judge.  Reversed and remanded with directions.

Walzer Melcher, Christopher C. Melcher and Steven K. Yoda for Plaintiff and Appellant.

Cuneo & Hoover, J. Nicholas Cuneo and Janina A. Verano for Defendant and Respondent.

_____

Appellant Y.R., mother of Z., appeals the trial court's order awarding child support from respondent A.F., father of Z., in an amount that deviated downward from the statewide uniform guideline by a substantial amount. Appellant contends the court failed to state its reasons for awarding less than the guideline or for concluding the amount awarded was in Z.'s best interests, as required by Family Code section 4056, subdivision (a).[1] She further contends the court erroneously based the award on appellant's and Z.'s historical expenses rather than the disposable income and lifestyle of respondent -- an extraordinarily high income earner -- and placed on appellant the burden of proving the guideline amount reasonable, rather than requiring respondent to prove the guideline amount unjust or inappropriate. Finally, appellant contends respondent presented insufficient evidence to support a deviation from the guideline.

We conclude that the trial court's failure to comply with the requirements of section 4056, subdivision (a) mandates reversal, despite the existence of evidence sufficient to warrant a deviation from the guideline. We further conclude that the court's reliance on appellant's and Z's expenses and lifestyle, rather than on those of respondent and his children, precludes us from implying findings adequate to support the deviation ordered by the

---

[1]     Undesignated statutory references are to the Family Code.

2

court.  Accordingly, we reverse and remand for reconsideration of child support under the correct criteria.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Appellant's Petition and Respondent's Opposition*

Appellant and respondent had a brief affair resulting in the birth of their daughter, Z., in July 2006.  Appellant is a hair stylist.  Respondent is a successful director and producer.  He is married and lives with his wife and three children, one of whom is an adult.  Appellant, who has had sole custody of Z. since her birth, did not immediately seek a formal order of support.  Instead, respondent paid certain of appellant's and Z.'s expenses and provided additional funds, totaling approximately $5,000 per month.  In October 2014, when Z. was eight, appellant filed a petition to establish parentage and for guideline child support.  Her petition also requested that respondent pay Z.'s health insurance, a portion of Z.'s uninsured health care costs, and half the cost of Z.'s extracurricular activities.[2]

After filing the petition, appellant submitted requests for production to respondent, asking for tax returns and other documents pertinent to his income and expenses.  Appellant also submitted interrogatories seeking detailed information about respondent's lifestyle, including a description of the home he and his family shared, the

_____

[2]    By stipulation of the parties, respondent was to have no custody or visitation rights.

3

restaurants they frequented, the vacations they took, and the cost of his other children's tuition, extracurricular activities, and medical insurance. Respondent objected to answering the interrogatories, on the ground that he acknowledged that he was an "extraordinarily high income earner" within the meaning of section 4057, subdivision (b)(3), and had the ability to pay child support in "any amount commensurate with the reasonable needs of the minor child."[3] He raised the same objection to the document

---

[3] Section 4057, subdivision (a) provides that guideline child support established by the formula set forth in section 4055, subdivision (a) -- which increases as the supporting parent's monthly disposable income increases -- "is presumed to be the correct amount of child support to be ordered." Subdivision (b)(3) of section 4057 provides that the presumption may be rebutted where "[t]he parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children." In *White v. Marciano* (1987) 190 Cal.App.3d 1026, the court held: "Where there is no question of the noncustodial parent's ability to pay any reasonable support order, . . . evidence of detailed lifestyle . . . [is] irrelevant to the issue of the amount of support to be paid and thus protected from discovery and inadmissible in determining the support order." (*Id*. at p. 1032.) As explained in *Johnson v. Superior Court* (1998) 66 Cal.App.4th 68, despite the broad language of *White*, financial information concerning extraordinarily high earners is not irrelevant to the needs of their children: the holding prohibits "the type of *detailed* discovery . . . for which responses would be 'unnecessary, . . . unduly burdensome and oppressive . . . .'" (*Id*. at p. 75.) As further explained in *Estevez v. Superior Court* (1994) 22 Cal.App.4th 423, in calculating guideline child support where the high income (*Fn. continued on next page.*)

4

requests. He provided a declaration stating his salary was $2,282,512 per year (approximately $190,000 per month). Appellant disputed that respondent was an extraordinarily high income earner under the statute, but did not seek an order compelling further responses.[4]

Prior to the hearing, appellant presented evidence that she and Z. lived in a three-bedroom, two-bath apartment in Santa Monica with her other two children, Z.'s older half-brother and half-sister. Z. shared a bedroom with her half-sister. Appellant described the apartment as "cramped," and stated that the rent for a four-bedroom condo in the same area would be, at a minimum, $6,000 per month, while renting a four-bedroom home in the area would cost between $10,000 and $15,000 monthly. Appellant further stated that

---

earner resists detailed discovery of his or her financial affairs, "the trial court may make such assumptions concerning his or her net disposable income, federal income tax filing status, and deductions from gross income as are least beneficial to the extraordinarily high earner . . . ." (*Id.* at p. 431.)

[4] Counsel for appellant threatened to file a motion to compel and participated in a meet and confer with respondent's counsel. Respondent eventually provided 2013 and 2014 profit and loss statements for his company, Cartel Productions, Inc.; 2013 and 2014 profit and loss statements for two other companies he owned with insignificant income; 2013 and 2014 personal profit and loss statements; cancelled checks showing his personal income for the first two months of 2015; and tax returns for himself and his companies for 2012 and 2013. Appellant no longer disputes that respondent's income falls within the extraordinarily high income category.

one of respondent's sons attended a private school at a cost of $34,000 per year ($2,833 per month).[5]  Appellant described a number of activities she wished to provide Z., including tutoring at a cost of $480 per month, a nanny at a cost of $1,800 per month, and theater camp at a cost of $2,100 per year.  She also stated she was unable to afford vacations, visits to out-of-state relatives, art classes, piano lessons, and better quality clothing and restaurants for Z. Appellant's income and expense declaration indicated she worked part-time as a hair stylist, grossing $1,833 per month.  Rent on her existing apartment was $2,840 per month.  Other expenses, including groceries, utilities, clothing and insurance, totaled approximately $6,000 per month.[6]

Respondent provided an income and expense declaration stating that his annual salary was $2,097,000, based on 2014 earnings for himself and his company, Cartel.[7]  Respondent acknowledged, however, that a

---

[5]     Respondent states in his brief that he paid $3,913 per month in private school tuition for the two minor children of his marriage.

[6]     This sum included the $400 per month appellant paid for Z.'s Catholic school tuition and the $550 per month he paid for appellant's car lease.

[7]     Attached statements of cash receipts and disbursements for Cartel showed the company grossing $5.4 million in 2013 and $3.339 million in 2014.  Payment for "salaries" (presumably appellant's) was $3,612,000 in 2013 and $2,097,000 in 2014.  Also attached to the income and expense declaration were copies of (*Fn. continued on next page.*)

percentage of the expenses claimed by Cartel should be included in his income, as they represented perquisites for him.[8]  His income and expense declaration indicated his rent was $20,900 per month and that he spent more than $3,000 per month in each of the following categories: "[g]roceries and household supplies," "[e]ating out," "[c]lothes," education for the two minor children who lived with him, and "[e]ntertainment, gifts, and vacation."  He also indicated "[o]ther" expenditures of over $31,000 per month, including legal fees unrelated to the underlying proceeding, fitness, non-tuition expenses for the children, "[m]iscellaneous [c]ash [e]xpenses" of $7,167, and $7,500 per month he had recently begun paying appellant.  He stated that he paid $13,457

---

five Cartel checks paid to respondent in January and February 2015, totaling approximately $300,000 after deduction of state and federal taxes ($610,000 gross).

[8]     Appellant submitted a declaration stating that in his estimation, 50 percent of Cartel's expenses for "[a]utomobile," "[e]ntertainment," "[o]ffice [s]upplies," "[t]ravel," and "[p]romotion" should be allocated to him as income, along with 25 percent of the amount allocated to "[t]elephone" expenses and 100 percent of the amount allocated to "[s]ecurity" expenses.  When these amounts were added, along with a few thousand dollars in residuals and fees from another company, his income increased from $2,097,000 in 2014 to $2,282,512, the figure he used to calculate his monthly income of approximately $190,000.  (See § 4058, subd. (a)(3); *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1326 [expenditures classified as expenses by a company may be re-classified perquisites of the employee for purposes of calculating spousal or child support].)

7

($10,000 plus various expenses) per month for child support for another child born out of wedlock.[9] His attorneys prepared a DissoMaster report indicating that based on disposable income of approximately $190,000 per month, guideline child support was $11,840 per month.[10]

Respondent's opposition focused on appellant's and Z.'s current expenses. Respondent argued that based on appellant's income and expense declaration, $11,840 in support represented "$4,660 more per month than [appellant] needs to pay the monthly expenses for [herself], [Z.] and [her] two other children from prior relationships," and that appellant needed support from respondent of only $7,180 per month "to pay her monthly expenses." Respondent's opposition contained no discussion of his or his other children's lifestyles, and made no attempt to calculate a reasonable amount of child support based on the evidence of his monthly income and expenses.

In her reply, appellant contended that respondent's income was much higher than $190,000 per month, observing that his company's income had been higher in 2013 and that he had already been paid $610,000 for the

---

[9] Whether this was included in the income and expense declaration in the tuition or children's expense categories was unclear.

[10] "The DissoMaster is a privately developed computer program used to calculate guideline child support under the algebraic formula required by section 4055." (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1227, fn. 5 (*Williams*).)

first two months of 2015.[11]  Appellant's accounting expert, David Blumenthal, calculated an average monthly salary for respondent by adding the data for 2013, a year in which respondent and his company had much higher income, to the data for 2014, and assuming that all of Cartel's expenses for those periods except agent commissions and payroll taxes were perquisites.[12]  This resulted in average income of $4,037,636 per year or $336,470 per month.  Based on this enhanced income, Blumenthal prepared a DissoMaster report indicating guideline child support was $25,325 per month.

### B. *The Hearing and the Court's Ruling*

Neither party presented additional evidence at the March 23, 2015 hearing.  Initially, the parties debated whether respondent was an extraordinarily high wage earner and the amount of guideline support.  After hearing argument, the court concluded that respondent was an extraordinarily high wage earner under section 4057.  It further found that respondent's representations concerning

---

[11]     As previously noted, the $610,000 represented pre-tax income.  Respondent's post-tax income from Cartel was approximately $300,000 for those two months.

[12]     In so doing, Blumenthal not only allocated 100 percent of the expenses listed in respondent's declaration to income, but also added such items as Cartel's accounting and business management expenses, bank charges, rent, union dues and legal fees.

Cartel's expenses were unsubstantiated, as they were based on "one document, for which there [was] not even a declaration of his business manager of how it was prepared or if it was prepared in the ordinary course." Accordingly, "for the purposes of . . . analysis," the court began with appellant's figures, both for respondent's monthly income -- over $300,000 -- and the guideline amount -- $25,325. The court described these figures as "probably excessive" and "inflated," as the expenses included as income to respondent by Blumenthal appeared to be "fairly typical categories of business expenses," but found Blumenthal's calculations to be "the most accurate number[s] I've got."

With respect to whether the guideline amount was excessive, respondent's counsel argued that appellant's request for sufficient funds to rent a four-bedroom house and hire a nanny exceeded the needs of the child, and whether the guideline amount was $11,840 or $25,325, it was excessive. He contended the court should award an amount "consistent with [the] $7,000 per month, that we've suggested, which is her expenses less her income." Counsel did not address respondent's resources or the expenses necessary to maintain his other children.

Like respondent's counsel, the court addressed its remarks to appellant's expenses. Addressing the appropriateness of the guideline amount, the court stated: "[Appellant's] income and expense declarations consistently show expenses that don't approach [$25,325], that never exceed $9,000 per month, excluding some expenses which . . .

[respondent] has been picking up. . . . [¶] . . .[¶] Her claimed expenses are $9,013. She includes the $400 in tuition that the respondent pays. . . . And I saw the rent she paid. . . . [¶] . . .[¶] If I just . . . take her expenses[,] -- which she doesn't claim are solely for . . . [Z.]. She says those are her personal expenses and she's included the full amount of her rent -- I have to infer that some amount of those expenses are attributable to the other two children for which respondent isn't responsible. But it's impossible for me to . . . sort them out." The court then ordered respondent to pay Z.'s tuition at a school "comparable in nature to the schools attended by his other children," 75 percent of reasonable extracurricular activities and school expenses not covered by tuition, all of Z.'s health insurance, and 90 percent of uncovered medical expenses. Without mention of respondent's expenses for himself and the children living with him, the court stated that guideline child support "would be far in excess of . . . the child's reasonable needs are . . . ." It ordered respondent to pay appellant $8,500 per month "as a reasonable assessment of the additional expenses that would allow the child to live at a standard of living that's appropriate for . . . respondent's position in life."

Appellant's counsel immediately objected, stating that appellant's past monthly expenses were limited by her lack of access to the funds needed to support Z. in an appropriate

manner.[13] The court responded: "I do believe that her income and expense declaration is evidence of the reasonable needs of the child, together with the other evidence that's been submitted to me about the . . . experiences [sic, presumably expenses] that the child is incurring. I think . . . [appellant] has a burden to show me what . . . the child's reasonable needs are where I've deviated."

In its written order, the court reiterated its findings that respondent was an extraordinarily high earner, that his monthly gross cash flow was $336,470, that guideline support was $25,325 per month, and that support in that amount "would exceed the child's reasonable needs . . . ." The order directed respondent to pay "$8,500 per month plus the payment of the child's medical insurance, 90% of the child's uncovered medical costs, 75% of the child's extra-curricular activities, and 100% of the child's private school tuition at an institution comparable to those that [respondent's] other children attend," stating this would "meet the minor child's reasonable needs." The written order gave no explanation for the court's calculation of child support, the reasoning underlying its conclusion that guideline support was excessive, or the evidence it relied

---

[13] Appellant also filed written objections after the hearing, stating: "The court placed the burden on [appellant] to prove the reasonable needs of the minor child while the law provides that it is [r]espondent's burden" and that "[t]he court abused its discretion in determining the minor child's needs by basing it on [appellant's] Income and Expense declaration . . . ."

upon in concluding the amount awarded was in the best interests of the child.  Appellant timely noticed an appeal of the support order.

## DISCUSSION

Appellant contends the court erred in failing to state, orally or in its order, its reasons for deviating from the guideline amount, as required by section 4056, subdivision (a).  Appellant further argues that sufficient findings cannot be inferred, as the record demonstrates the court improperly placed the burden of justifying a guideline award on appellant, and improperly relied on appellant's historical expenses, rather than on respondent's disposable income and lifestyle, to determine Z's reasonable needs.  We agree.

A.  *Standard of Review*

The interpretation and application of section 4056 is reviewed de novo.  (See, e.g., *Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 81 [appellate courts independently determine proper interpretation of statutes, regulations and rules].)  Child support awards are reviewed for abuse of discretion.  (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282 (*Cheriton*); *Williams, supra,* 150 Cal.App.4th at pp. 1233-1234.)  However, in reviewing such orders, appellate courts recognize that "California has a strong public policy in favor of adequate child support," that "'determination of a child support obligation is a highly regulated area of the law,'" and that "'the only discretion a

13

trial court possesses is the discretion provided by statute or rule.  [Citations.]'  [Citation.]"  (*Cheriton, supra*, at p. 283; accord, *Williams, supra*, at p. 1234.)  The trial court "has 'a duty to exercise an informed and considered discretion with respect to the [parent's child] support obligation . . . .' [citation]," and its "discretion is not so broad that it 'may ignore or contravene the purposes of the law. . . . [Citations.]' [Citation.]"  (*Cheriton, supra,* at p. 283.)  Moreover, "a [trial] . . . court abuses its discretion if it applies improper criteria or makes incorrect legal assumptions" (*Ellis v. Lyons* (2016) 2 Cal.App.5th 404, 415), or when its decision "is influenced by an erroneous understanding of applicable law . . . ." (*Farmers Insurance Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106.)

> B. *The Trial Court Failed to Comply with the Statutory Requirements for Deviating from Guideline Child Support*

Every trial judge making a child support order must begin by "making a formula calculation pursuant to section 4055."  (*In re Marriage of Hall* (2000) 81 Cal.App.4th 313, 316-317 (*Hall*).)  The provision "sets forth a statewide uniform guideline for determining the appropriate amount of child support.  The term 'guideline,' however, is a euphemism.  The support amount rendered under the guideline's algebraic formula 'is intended to be presumptively correct in all cases, and only under special circumstances should child support orders fall below the

14

child support mandated by the guideline formula.'" (*In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183 (*Hubner*), quoting § 4053, subd. (k).) As discussed, one special circumstance that justifies award of an amount below the guideline arises when "the parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children." (§ 4057, subd. (b)(3).) "The parent who invokes [the] high income exception to the guideline[] has the burden of proving '"application of the formula would be unjust or inappropriate,' and the lower award would be consistent with the child's best interests." (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1326.)

A child's '"needs'" are not determined under an objective standard. "'What constitutes reasonable needs for a child varies with the circumstances of the parties.'" (*S.P. v. F.G.* (2016) 4 Cal.App.5th 921, 931, quoting *In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 129 (*Chandler*).) ""'Clearly where the child has a wealthy parent, that child is entitled to, and therefore 'needs' something more than the bare necessities of life.""" (*Hubner, supra,* 94 Cal.App. 4th at p. 187, quoting *Johnson v. Superior Court, supra,* 66 Cal.App.4th at p. 72.) A parent's duty of support for his or her children does not end with the furnishing of necessities ""'if he [or she] is able to afford more.""" (*Hubner, supra,* at p. 187, quoting *McGinley v. Herman* (1996) 50 Cal.App.4th 936, 941; see section 4053, subd. (a) ["A parent's first and principal obligation is to support his or her minor children

according to the parent's circumstances and station in life"];
subd. (d) ["Each parent should pay for the support of the
children according to his or her ability"]; subd. (f) ["Children
should share in the standard of living of both parents"].)  In
short, "income discrepancies . . . can affect the child's needs,"
and even where the section 4057, subdivision (b)(3) exception
clearly applies, the trial court should "assess[] [the child's
needs] differently depending on whether [the supporting
parent] earns $12 million a year [or] . . . $1 million . . . ."
(*Johnson v. Superior Court, supra*, at p. 74; accord, *Hubner,
supra,* at p. 187.)

A trial court persuaded by the evidence that a
downward departure from the guideline is justified because
the guideline amount exceeds the child's needs must comply
with the procedural requirements of section 4056,
subdivision (a), which states:  "To comply with federal
law,[14] the court shall state, in writing or on the record, the

---

[14]     (See 42 U.S.C. section 667, subd. (a) ["Each State, as a
condition for having its State plan approved under this part,
must establish guidelines for child support award amounts
within the State"]; subd. (b)(2) ["There shall be a rebuttable
presumption, in any judicial or administrative proceeding for the
award of child support, that the amount of the award which
would result from the application of such guidelines is the correct
amount of child support to be awarded.  A written finding or
specific finding on the record that the application of the
guidelines would be unjust or inappropriate in a particular case,
as determined under criteria established by the State, shall be
sufficient to rebut the presumption in that case"].)

following information whenever the court is ordering an amount for support that differs from the statewide uniform guideline formula amount under this article: [¶] (1) The amount of support that would have been ordered under the guideline formula. [¶] (2) the reasons the amount of support ordered differs from the guideline formula amount. [¶] (3) The reasons the amount of support ordered is consistent with the best interests of the children." Section 4056 is clear: "'[A] court *cannot* exercise its discretion [to deviate from the guideline] . . . without saying why, either in writing or on the record.'" (*In re Marriage of Brinkman* (2003) 111 Cal.App.4th 1281, 1292-1293.) The obligation to provide the information required by section 4056, subdivision (a) arises sua sponte (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1014), and the court's failure to comply with the statute's procedural requirements, standing alone, constitutes ground for reversal of a child support order and remand for compliance. (*Rojas v. Mitchell* (1996) 50 Cal.App.4th 1445, 1450 [reversal required where trial court failed to state its reasoning, although support order did not appear defective or unsupported by substantial evidence]; accord, *Hubner, supra,* 94 Cal.App.4th at p. 183; *Hall, supra,* 81 Cal.App.4th at p. 319; *In re Marriage of Gigliotti* (1995) 33 Cal.App.4th 518, 526.) As explained in *Hall*, the provision serves several vital functions, including assuring parents that the system under which support is calculated is "'just'" and that "'the amount of the support was arrived at [under a process] . . . that is fair and reasonable to both the

payor and the payee,'" and providing sufficient information in the record for appellate courts "to evaluate whether a court correctly followed the formula guideline . . . or whether it abused its discretion in differing from it." (*Hall, supra,* at pp. 319-320, italics omitted.)

Here, the court found the monthly guideline amount was $25,325, but awarded $8,500 in child support.[15] It failed to state, either in its written order or on the record, its reasons for deviating from the guideline or why it believed the amount awarded was in Z.'s best interests. Accordingly, we must reverse and remand for the court to provide the omitted reasoning.[16]

---

[15] The court also directed respondent to pay private school tuition for Z. and the cost of health insurance. The amount of these costs is not clear from the record, but neither party suggests they would be more than $3,600 per month.

[16] We recognize the court's written order stated that the guideline amount "would exceed the child's reasonable needs," and the court stated on the record that its $8,500 per month award was "a reasonable assessment of the additional expenses that would allow the child to live at a standard of living that's appropriate for him [sic] and for the respondent's position in life." But to comply with section 4056, subdivision (a), a court must do more than issue conclusory findings; it must articulate why it believes the guideline amount exceeded the child's needs and why the deviation is in the child's best interests. (See *S.P. v. F.G., supra,* 4 Cal.App.5th at p. 935 ["The statement of reasons contemplated by section 4056, subdivision (a)(3) is not just a conclusory finding that the variance from presumptively correct formula support is in a child's best interest"].) In *S.P. v. F.G.,* where the support order was affirmed, the trial court made *(Fn. continued on next page.)*

18

Respondent contends that the mandated findings are discernable from the record.  (See *Hubner, supra,* 94 Cal.App.4th at p. 183 [appellate court need not reverse "if the missing information [required by section 4056, subdivision (a)] is . . . otherwise discernible from the record"]; *Rojas v. Mitchell, supra,* 50 Cal.App.4th at p. 1450 ["In general, the failure to make a material finding on an issue supported by the pleadings and substantial evidence is harmless when the missing finding may reasonably be found to be implicit in other findings"].)  However, the court's comments on the record do not supply the missing rationale; if anything, they support an alternative ground for reversal.  First, the court repeatedly indicated it had reviewed *appellant's* income and expense declaration and assured itself that the amount awarded would allow her to pay her existing expenses.  As previously discussed, a child's needs are primarily a function of the higher earning parent's disposable income and standard of living.  The assumption that a child's "historic expenses" define his or her needs "is erroneous in the case of wealthy parents, because it ignores the well-established principle that the 'child's need is measured by the parents' current station in life.'"  (*Cheriton,*

specific findings as to reasonable monthly amounts for rent, utilities, groceries, dining out, vacations, entertainment, auto expenses, clothing, and dry clearing, relating its findings to the evidence presented as to both the mother's current expenses and the costs of a more lavish lifestyle in a detailed written order.  (4 Cal.App.4th at pp. 925-930.)

*supra,* 92 Cal.App.4th at p. 293, quoting *In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 96; accord, *Chandler, supra,* 60 Cal.App.4th at pp. 127, 129 [support order reversed where trial court focused on mother's monthly expenses and concluded $3,000 represented the "'current reasonable needs'" of the child, directing father, who had gross monthly income of $117,000, to pay $3,000 per month support, "rather than independently determining the expenses for [the child]"]; *Hubner, supra,* 94 Cal.App.4th at p. 186 [extraordinarily high earning parent's income "clearly is the primary factor in a child support determination"]; see also *McGinley v. Herman, supra,* 50 Cal.App.4th at p. 945 [where trial court determined an award of $2,150 per month was sufficient for an out of wedlock child because it represented the amount "'usually'" awarded in "'cases like this,'" Court of Appeal reversed, finding court "did not give sufficient consideration to the child's right to share in the standard of living of his extraordinarily high earning father" (italics omitted)].)

Second, the court expressed concern that support for Z. might accrue to the benefit of appellant or her other children. The Legislature deems it "appropriate[]" that child support be used to "improve the standard of living of the custodial household" because this "improve[s] the lives of the children." (Section 4053, subd. (f).) Thus, courts have "consistently recognized" that "'where the supporting parent enjoys a lifestyle that far exceeds that of the custodial parent, child support must to some degree reflect the more

opulent lifestyle even though this may, as a practical matter, produce a benefit for the custodial parent.'" (*In re Marriage of Hubner* (1988) 205 Cal.App.3d 660, 668; accord, *Johnson v. Superior Court, supra*, 66 Cal.App.4th at p. 71; *In re Marriage of Catalano* (1988) 204 Cal.App.3d 543, 552.)

Third, based on the comments made after its ruling, the court appeared to place the burden on appellant to justify payment of the guideline amount she sought. "'When the extraordinarily high earning supporting parent seeks a downward departure from a presumptively correct guideline amount, it is that parent's "burden to establish application of the formula would be unjust or inappropriate," and the lower award would be consistent with the child's best interests.'" (*S.P. v. F.G., supra*, 4 Cal.App.5th at p. 930.)

Respondent contends there was evidence before the court -- e.g., father's breakdown of his household expenses -- from which the court reasonably could have concluded that Z.'s needs were in the range of the amount awarded. As the court held in *Rojas v. Mitchell, supra*, 50 Cal.App.4th at page 1450, the existence of substantial evidence in the record does not take the place of the reasoning required by section 4056, subdivision (a). In any event, nothing in the record indicates the court relied on any evidence other than appellant's income and expense declaration. Even after its ruling was challenged by appellant's counsel, the court reiterated its

reliance on "[appellant's] income and expense declaration" as "evidence of the reasonable needs of the child."[17]

Finally, we address appellant's contention that on remand, the trial court should be instructed to award guideline support of $25,325 per month retroactive to October 2014, because respondent "did not meet his burden in rebutting the guideline because he presented no evidence that the guideline exceeded the child's needs according to the standard of living attainable by his income." Respondent provided a declaration of income and expenses and detailed information about his expenditures from which information about his lifestyle and the standard of living enjoyed by him and his other children might have been extracted. In addition, Mother presented evidence of the cost of the more comfortable housing and some of the extracurricular activities she wished to provide for Z. (See *S.P. v. F.G.*, *supra*, 4 Cal.App.5th at p. 930 ["A party's burden of proof may be satisfied with evidence supplied by the party without the burden"].) On remand, the court may determine that deviation from the guideline is warranted after reassessing the evidence under the correct standard and making the requisite statutory findings.[18]

---

[17] The only other evidence the court mentioned was "the . . . evidence that's been submitted to me about the [expenses] . . . that the child's incurring," another apparent reference to appellant's income and expense declaration.

[18] We note that the court's findings and order were made on form FL-340, submitted by respondent's counsel. The Judicial (*Fn. continued on next page.*)

## DISPOSITION

The order is reversed. The matter is remanded for the trial court to (1) assess whether the guideline amount of $25,325 exceeds Z.'s needs under the criteria discussed in this opinion and if so, (2) state, in writing or on the record, the reasons the amount of support ordered differs from the guideline formula amount and the reasons the amount of support ordered is consistent with the best interests of Z. Appellant is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.                              WILLHITE, J.

---

Council has adopted a supplement to form FL-340 -- form FL-342a (Non-Guideline Child Support Findings Attachment) -- for mandatory use when a court deviates from the guideline. (See Gov. Code, § 68511.) Form-342a includes the findings mandated by section 4056. Even when that form is used, however, the court must state the reasons for the findings in writing or on the record. (See *Rojas v. Mitchell, supra,* 50 Cal.App.4th at pp. 1450-1451.)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| Y.R., | B266621 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. Nos. BF051758) |
| v. | |
| A.F., | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:*

It is ordered that the opinion filed February 24, 2017 be modified on page 19, footnote 16, line three as follows:

Replace the word *clearing* with *cleaning* so as to be read as "expenses, clothing, and dry cleaning, relating its findings to the . . . ."

The opinion was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be certified for publication in the Official Reports. Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion, as modified, is certified for

publication.

This modification does not change the judgment.

_____

*EPSTEIN, P. J.       MANELLA, J.       WILLHITE, J.