Filed 9/28/20  County of San Diego Dept. of Child etc. v. A.H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| COUNTY OF SAN DIEGO DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A.H.,<br><br>    Respondent,<br><br>J.O.,<br><br>    Defendant and Appellant. | D075759<br><br><br><br>(Super. Ct. No. DF174420) |

APPEAL from an order of the Superior Court of San Diego County, Adam Wertheimer, Judge.  Reversed.

Dennis Temko, for Defendant and Appellant J.O.

Antonyan Miranda, Anthony J. Boucek and Timothy Miranda, for Respondent A.H.

No appearance for Plaintiff and Respondent County of San Diego Department of Child Support Services.[1]

---

[1]    The County of San Diego Department of Child Support Services is not a party to this appeal.

Appellant J.O. ("Mother") appeals from an order modifying the amount of child support she received from respondent A.H. ("Father") on behalf of their child (Child). Father is an extraordinarily high earner. The court determined that the guideline amount of support was $8,000. The court reduced that amount by two hardship deductions for Father because he supported two other children, and further deviated downward under the limited high-earner exception, reducing the support order to $4,000, one-half the presumptively correct amount.

We reverse the order because it was not supported by evidence and exceeded the limited discretion of the court. There was no evidence that the support of his two other children caused a hardship for Father. The court's downward deviation from the guideline amount was based on improper criteria—Child's historical expenses and Father's historical contributions. Further, the court failed to explain the basis for its needs assessment and why it found one-half of the presumptively correct guideline amount to be in the best interest of Child.

BACKGROUND

Child of Mother and Father was born in April 2002. Mother and Father were never married. Both subsequently married other people and had two additional children each. Mother had custody of Child 98 percent of the time. In 2012, Mother and Father agreed to non-guideline child support of $800 per month. Over the years, Father paid additional expenses, averaging total support of $1,864 per month to Child.

Plaintiff County of San Diego Department of Child Support Services filed a motion on October 12, 2018, on behalf of Mother and Child to modify the child support order by increasing the amount of support to the guideline amount. Mother and Father filed income and expense declarations (IEDs),

which were not disputed.  Father's total monthly income was about $111,000.  His expenses averaged $79,052 per month.  Mother's monthly income was $3,045, and her husband earned $5,000 per month.  Mother's first IED showed $6,811 in expenses per month.  A later IED included installment payments she owed, for total expenses of $8,794 per month.

There was no evidence at the hearing about Father's lifestyle or Child's proposed needs to maintain a lifestyle consistent with Father's.  Father complained that he gave Child a luxury car for Child's 16th birthday, and that Child soon crashed the car and was arrested.  Father claimed that Child was arrested for driving under the influence, but Mother said that Child did not stop when police tried to pull him over, crashed the car and ran away.  He was arrested for evading the police.  Father hired a lawyer for Child and took back the car.  Mother said that after the car incident, "[Father] has completely cut [Child] out of his life and has written him off.  He hasn't had any contact with him since July."  The court responded, "Well, what I read was the other way around.  That's what the declaration states.  It's the other way around, because he has fixed the car; that he, rightfully so, got upset at the son for crashing a brand-new car, on the day he got it, allegedly intoxicated."  Father confirmed that he cut off communication with Child after Child crashed the car, and that Father had the car towed to Father's house, where it remains.

The court determined that the statutory guideline amount was $8,000 per month.  The court said it would grant two hardship deductions to Father because he had two other children, reducing the support from $8,000 per month to $6,508 per month.  It directed the parties to consider a settlement starting with this amount of $6,508, suggesting that some money should go directly to Mother and Child and some should be placed in a deferred account

for Child's future, because Child was 16 and support would end soon.  The parties discussed the matter between themselves but could not agree on a settlement.

Mother's counsel asked the court to make findings pursuant to Family Code section 4056, subdivision (a)[2] if it deviated from the guideline amount. The court stated its decision orally, starting with the guideline amount of $8,000 per month.  It granted two hardship deductions to Father and one to Mother, "finding that it is appropriate that the parties' other children should be considered in this calculation as each of the parties' incomes are also being utilized to support other children who have the same right to support from their parents."  The hardships reduced Father's support obligation to $6,508. The court further deviated from this amount because, "application of the guideline formula would be unjust and inappropriate in this matter. . . . [T]he parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the needs of the child."  The court said that Child's needs were being met, "and *they were met and then some in the past*." (Emphasis added.)  The court ordered a below-guideline amount of $4,000 per month.  It stated, "This is still an amount that will exceed the needs [of Child] as stated in the income and expense declaration and would amount to a bit of a windfall for Mother's household.  However, that is not inappropriate based on case law."  The court continued: "And it is hoped that the Mother will properly utilize this for the support of the child and hopefully administer it for the future of the Child as

---

[2]    Family Code section 4056, subdivision (a) requires the court to state the reasons why an amount of support differs from the guideline amount and the reasons why the amount ordered is consistent with the best interest of the child.

Further statutory references are to the Family Code unless otherwise specified.

well.  However, the Court believes that is an appropriate number based upon the facts and circumstances."  It concluded, "Court believes it is in the best interest of the minor child."

## DISCUSSION

A. <u>Legal Framework of Child Support</u>

California provides a statutory guideline for child support to achieve its top priority of protecting the best interests of children.  (§ 4053, subd. (e); *In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 528 (*Macilwaine*); *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283 (*Cheriton*).)  In awarding support, courts are required to adhere to statutory principles:  " ' "A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." '  (§ 4053, subd. (a).)  "Each parent should pay for the support of the children according to his or her ability."  (§ 4053, subd. (d).)  "Children should share in the standard of living of both parents.  Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children."  (§ 4053, subd. (f).)' "  (*Macilwaine*, at p. 528; *Cheriton*, at p. 283.)

The State's "guideline is intended to be presumptively correct in all cases . . . ."  (§ 4053, subd. (k); *Macilwaine*, *supra*, 26 Cal.App.5th at p. 528.)  The amount is determined by a mathematical formula based on each parent's net monthly disposable income.  (*Macilwaine*, at p. 528; *Cheriton*, *supra*, 92 Cal.App.4th at p. 284.)  " 'The term "guideline," however, is a euphemism' [citation] because the amount generated by the guideline formula is presumptively correct (§§ 4053, subd. (k), 4057, subd. (a)).  Under section 4057, the guideline figure 'is a rebuttable presumption affecting the burden of proof and may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case,

5

consistent with the [policy] principles set forth in Section 4053.' (§ 4057, subd. (b).)" (*S.P. v. F.G.* (2016) 4 Cal.App.5th 921, 930 (*S.P.*).)

Whenever the court orders an amount that differs from the guideline formula, it must state on the record or in writing the reasons the amount differs from the guideline formula amount and the reasons the amount is consistent with the best interests of the child or children. (§ 4056, subd. (a) (1) & (2); *In re Marriage of Carlsen* (1996) 50 Cal.App.4th 212, 217 (*Carlsen*); *Y.R. v. A.F.* (2017) 9 Cal.App.5th 974, 984–985 (*Y.R.*).) "The obligation to provide the information required by section 4056, subdivision (a) arises sua sponte [citation], and the court's failure to comply with the statute's procedural requirements, standing alone, constitutes ground for reversal of a child support order and remand for compliance. [Citation.]" (*Y.R.* at pp. 984–985.) This requirement "serves several vital functions, including assuring parents that the system under which support is calculated is ' "just" ' and that ' "the amount of the support was arrived at [under a process] . . . that is fair and reasonable to both the payor and the payee,' " ' and providing sufficient information in the record for appellate courts 'to evaluate whether a court correctly followed the formula guideline . . . or whether it abused its discretion in differing from it.' " (*Id.* at p. 985.)

Because child support is such a highly regulated area of law, we independently review the interpretation and application of the child support laws. (*Macilwaine, supra*, 26 Cal.App.5th at p. 527.) A court errs when it " 'ignores or contravene the purposes of the law, . . . applies improper criteria or makes incorrect legal assumptions.' " (*Y.R.*, 9 Cal.App.5th at pp. 982–983.) The trial court has discretion to set the amount of child support as long as its decision complies with the statutory legal principles. (*S.P., supra*, 4 Cal.App.5th at p. 931.) The trial court can depart from the guideline amount

6

only in the special circumstances enumerated in the statutes.  (§§ 4052, 4053, subd. (k); *Macilwaine*, *supra*, 26 Cal.App.5th at p. 528; *Y.R.* at pp. 982–983.)

"[T]he 'substantial evidence' standard applies when reviewing the quantum of proof adduced at a hearing to determine if the elements necessary to support a judgment are present, while the 'abuse of discretion' standard reviews only whether the trial court's resolution is within the range of options allowed by the relevant criteria.  [Citation.]" (*Carlsen*, *supra*, 50 Cal.App.4th at p. 215, fn. 2; *Macilwaine*, *supra*, 26 Cal.App.5th at p. 527.)

B.  <u>Forfeiture</u>

Father's primary response is that Mother forfeited her claims on appeal by failing to object to the trial court's rulings on the record.  However, there is no requirement to object at trial before arguing on appeal that the evidence was not sufficient to support the court's ruling.  (*Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1067 (*Oiye*); *In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1560.)  Questions of law such as the court's application of statutes to undisputed evidence cannot be forfeited either.  (*Oiye*, at p. 1067.)  The trial court has a sua sponte obligation to state the reasons the amount awarded differs from the guideline amount and benefits the best interests of the child. It is our duty to determine if the court applied improper criteria, or incorrect legal assumptions or interpretations in granting an amount different from the statewide guideline formula.  (*Macilwaine*, *supra*, 26 Cal.App.5th at p. 527; *Y.R.*, 9 Cal.App.5th at pp. 982–983.)

Father relies on *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1168, in support of his argument of forfeiture, but the statement of decision was not statutorily required there.  The litigant there asked for the court to prepare a statement of decision under Code of Civil Procedure section 632. (*Arceneaux*, at p. 1132.)  Code of Civil Procedure section 634 requires the

7

complaining party to state any objections to the trial court to avoid having an appellate court imply findings in favor of the prevailing party. (*Arceneaux*, at p. 1133.) Here, the trial court was required to state its reasons for not granting the guideline amount, and the permissible reasons are narrowly circumscribed by the law. (*Y.R.*, *supra*, 9 Cal.App.5th at pp. 984–985.) The law and public policy require that we ensure that the trial court acted within the constraints of the law of child support. (*Macilwaine*, *supra*, 26 Cal.App.5th at p. 528.) Further, a parent cannot waive or forfeit the right to child support because child support is for the benefit of the child, not the adult. (*Kristine M. v. David P.* (2006) 135 Cal.App.4th 783, 786; *K.M. v. E.G.* (2005) 37 Cal.4th 130, 144.) Mother could not deliberately or inadvertently cut off or limit Child's right to support by failing to object to rulings against her.

Father also asserts that Mother had the burden of demonstrating what the Child's needs were. Once the guideline amount of $8,000 was calculated, it was Father who had the sole burden of producing evidence tending to show that the guideline amount exceeded Child's needs or was not in his best interest. (*S.P.*, *supra*, 4 Cal.App.5th at p. 931.) Mother had no burden to show that Child's needs equaled the presumptively correct guideline amount. (*Ibid.*)

C. Hardship Deduction

1. *Legal Principles*

A deduction may be permitted if a parent "is experiencing *extreme* financial hardship due to justifiable expenses resulting from" (§ 4070, italics added) statutorily enumerated circumstances, including responsibility for the support of other minor children (§4071, subd. (a)(2)). Although the presence of other children is a valid consideration when evaluating a hardship

8

deduction, "a hardship deduction is not a 'foregone conclusion' on the birth of new children; . . . the family's income, as well as purported expenses, have to be considered in making the 'hardship' determination." (*In re Marriage of Paulin* (1996) 46 Cal.App.4th 1378, 1382 (*Paulin*).) Deductions are limited to "unusual situations" when the parent has extreme financial hardships. (*Carlsen, supra*, 50 Cal.App.4th at p. 217, fn. 5; *Paulin*, at pp. 1382–1383.) "Because the trial court cannot invoke a hardship deduction absent the element of extreme financial hardship, review of this aspect of its ruling is subject to 'substantial evidence' review." (*Carlsen*, at p. 215, fn. 2.) We review "the quantum of proof adduced at the hearing to determine if the elements necessary to support a judgment are present." (*Ibid*.)

### 2. *Analysis*

There is no evidence that Father experienced any financial hardship as a result of supporting his two additional children. Father never requested a hardship deduction for his children. He left blank the line on his IED for stating "special hardships." Father never claimed that supporting his two small children, ages one and two, was a financial hardship. Father's total monthly income was about $111,000, and his total monthly expenses were $79,052. The only reason given by the court for the hardship deductions was Father's support of his two other young children who lived with him and his wife. The court made no finding that Father was experiencing an "extreme financial hardship" due to expenses resulting from his two young children, as required by section 4070. The court treated the other-children deduction as automatic, which it is not. (*Paulin, supra*, 46 Cal.App.4th at p. 1382; *Carlsen, supra*, 50 Cal.App.4th at p. 217, fn. 5.) Even if we view the court's order in the light most favorable to the judgment, there is no evidence

supporting the hardship deductions.  Accordingly, we must reverse the court's granting of two hardship deductions to Father.

      D.  <u>Downward Deviation for Extraordinarily High Earners</u>

          1.  *Legal Guidelines*

In addition to the deductions in cases of extreme financial hardship, the court may deviate downward from the guideline amount in some circumstances when the supporting parent has an extraordinarily high income, like Father.  The presumption that the guideline amount is correct may be rebutted by "admissible evidence showing that application of the formula would be *unjust or inappropriate* in the particular case" when it has been found "by a preponderance of the evidence. . . [that the] parent being ordered to pay child support has an extraordinarily high income and the amount determined by the formula would *exceed the needs of the children*." (§ 4057, subd. (b)(3), italics added.)  The parent who invokes the high-income exception to the guideline has the burden of showing that application of the formula would be unjust or inappropriate, and that a lower award would be consistent with the child's best interests and with the principles set forth in section 4053. (*S.P.*, *supra*, 4 Cal.App.5th at p. 930; *Macilwaine*, *supra*, 26 Cal.App.5th at p. 528.)

The "needs" of a child of an extraordinarily high earner are not determined by an objective standard. (*S.P.*, s*upra*, 4 Cal.App.5th at p. 931; *Macilwaine, supra,* 26 Cal.App.5th at p. 536; *Y.R.*, *supra*, 9 Cal.App.5th 974, 983–984.)  "Children are entitled to the standard of living *attainable* by the parent's income.  [Citation.]  As the analysis turns primarily on the wealth of the parents, a child of extraordinarily wealthy parents ' " ' "is entitled to, and therefore 'needs' something more than the bare necessities of life. [Citations]." ' " ' " (*Macilwaine*, at p. 536; *Y.R.*, at p. 984.)  The historical

expenses of a child, as expressed in the supported parent's current monthly expenses, can be considered in determining needs. (*S.P.*, *supra*, 4 Cal.App.5th at p. 932, fn. 9.) "[P]ast expenses might shed light on the reasonable *cost* of particular needs," for example. (*Macilwaine*, at p. 537, fn. 29.) However, "a child's historical expenses do not define the child's current needs." (*S.P.*, at p. 932, fn. 9; *Y.R.*, at p. 986 [error to determine needs based on mother's current IED].) Similarly, the amount that a wealthy supporting parent has chosen to confer on the child in the past is not a measure of the current needs of the child. (*Macilwaine*, at pp. 537–538 [error to identify as "needs" the child's current standard of living based on father's past contributions].) "The cost of meeting the needs of the supported child must be independently determined." (*Id.* at p. 538.)

When the court grants a downward deviation, it must state on the record or in writing the reasons why the amount given varies from the guideline amount and the reasons why the amount ordered is consistent with the best interests of the child. (§§ 4056, subd. (a) & 4057, subd. (b); *Macilwaine*, *supra*, 26 Cal.App.5th at p. 536.) Cursory or conclusory statements are not sufficient, unless the record clearly shows the reasons for the choices. (*Y.R.*, *supra*, 9 Cal.App.5th at p. 985, fn. 16; *In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183 (*Hubner*) [appellate court can discern reasons from record].)

### 2. *Improper Factors*

" '[I]n the case of wealthy parents . . . the well-established principle [is] that the "child's need is measured by the parents' current station in life." [Citations.]' " (*S.P.*, *supra*, 4 Cal.App.5th at p. 931.) There was no evidence or discussion at the hearing, however, about Father's current station in life or his attainable lifestyle. The court instead determined Child's needs based on

11

two factors, both of which were improper: Mother's historical expenses and Father's past contributions. (*Macilwaine, supra*, 26 Cal.App.5th at pp. 537–538; *Y.R., supra*, 9 Cal.App.5th at p. 986.) The court assumed that Child's current lifestyle equaled his needs. The judge said, "I believe the child's *needs are being met*. And I believe they were *met and then some in the past*." He said Child's needs were "as stated in [Mother's] income and expense declaration." Similar rulings that a child's needs are defined by the custodial parent's IED were reversed in *Macilwaine* and in *Y.R.* (*Macilwaine*, at pp. 537–538; *Y.R.*, at p. 986.) In *Macilwaine*, as here, the trial court determined that the children's needs were equal to their current lifestyle, as shown by the mother's current expenses and the father's past contributions. (*Macilwaine*, at pp. 526, 537.) The appellate court concluded that the trial court "applied the wrong legal standard" (*id*. at p. 537), reversed and remanded with directions to the trial court to "independently ascertain the needs of the children based upon [the father's] financial circumstances and 'station in life,' not historical expenditures." (*Id*. at p. 540.)

In *Y.R.*, the trial court erred by determining the child's needs based on the mother's current expenses as reflected in her IED. (*Y.R., supra*, 9 Cal.App.5th at p. 986.) It further erred by expressing concern about a windfall for the mother and by shifting the burden of demonstrating need onto the mother. (*Id*. at pp. 986–987.) The court here looked at Child's current lifestyle, which was defined by Mother's expenses plus the amounts provided by Father, and identified that as the needs of Child. The court never independently determined the needs of a child whose parent earns more than $100,000 per month.

If we review the court proceedings to try to glean a rationale for the reduced support, it appears that the court may have deviated downward from

12

the guideline amount because it believed that Child was "immature." The court expressed concern that if Child received a large amount of money, he might spend the money on "shoes or cell phones or who knows what." Child's needs, however, were not to be measured by an objective assessment of what a 16-year-old teenager needs, but by a comparison to Father's standard of living. (*S.P.*, s*upra*, 4 Cal.App.5th at p. 931; *Macilwaine*, *supra*, 26 Cal.App.5th at p. 536; *Y.R.*, *supra*, 9 Cal.App.5th at pp. 983–984.) Father spent $5,000 per month on clothing and $750 per month on telephone, cell phone and e-mail for two adults and two toddlers. As stated in *Y.R.*, " ' "child support must to some degree reflect the more opulent lifestyle even though this may, as a practical matter, produce a benefit for the custodial parent." ' " (*Y.R*, at p. 986.)

Father contends that we should follow *S.P.*, *supra*, 4 Cal.App.5th 921, instead of *Macilwaine*, *supra*, 26 Cal.App.5th 514, and *Y.R.*, *supra*, 9 Cal.App.5th 974. The court in *S.P.* considered the child's historic expenses and the father's historic payments as some evidence supporting a downward deviation. It stated, however, that "a child's historical expenses do not define the child's current needs." (*Id*. at p. 932, fn. 9.) The historical expenses of the child in *S.P.* were already high—$10,000 per month plus all medical, educational and extracurricular costs—and were considered as some evidence of the child's reasonable needs. The court did not limit its consideration to the child's current standard of living, however, but compared her current lifestyle with the father's lifestyle and with a list of proposed needs totaling more than $70,000 per month. (*Id*. at pp. 925, 936.) It granted a "substantial increase over the amounts currently being paid," that would provide the child "with a high/affluent standard of living," consistent with her father's. (*Id*., at p. 929.) The greatest difference between the circumstances

13

in *S.P.* and here is that the *S.P.* trial court issued a long and detailed order making specific findings of the child's needs of reasonable monthly amounts for multiple categories, including rent, utilities, groceries, dining out, vacations, entertainment, auto expenses, clothing, and dry cleaning. The court related its findings to the evidence presented as to both the mother's current expenses and the costs of a more lavish lifestyle. (*Id.* at pp. 925–930.)

The court here, in contrast, did not issue any detailed explanation of Child's needs and did not consider Father's station in life in setting child support. It did raise the amount Father had been paying from one-quarter of the guideline amount to one-half of the guideline, but without explanation. In addition to relying on improper factors and ignoring the statutorily prescribed definition of the needs of a child of an extraordinarily high earner, the court failed to articulate the reasons why it granted the downward departures and why the resulting amount was in the child's best interests, as the *S.P.* court did. The *S.P.* opinion does not assist Father.

### 3. *Failure to Explain Reasons*

The court erred in failing to state sufficient reasons explaining why it granted downward deviations and why the support award of $4,000 was in the best interests of Child. (§ 4056, subd. (a).) The courts in *Macilwaine* and in *Y.R.* reversed the child support orders for failing to state sufficient reasons, as well as for using improper factors. (*Macilwaine*, *supra*, 26 Cal.App.5th at pp. 538–539; *Y.R.*, *supra*, 9 Cal.App.5th at pp. 984–985.)

Section 4056 requires the court to provide reasons why the award differs from the guideline amount and is in the best interests of the children. (§ 4056, subd. (a) (1) & (2); *Y.R.*, *supra*, 9 Cal.App.5th at p. 985.) The statement of reasons is mandatory and failure to comply is ground for reversal. (*Y.R.*, at pp. 984–985.) "Section 4056 requires the court to do 'more

14

than issue conclusory findings; it must *articulate why* it believes the guideline amount exceeded the child's needs and why the deviation is in the child's best interests.' [Citation.]' [Citation.]" (*Macilwaine*, at p. 539; *Y.R.*, at p. 985, fn. 16; *S.P.*, *supra,* 4 Cal.App.5th at p. 935.)

The court stated here only that it appeared that Child's needs were met by Father's past contributions and Mother's current expenses. The court increased support by $2,000 per month but did not explain the reasons for doing so, did not discuss or explain the needs of Child, and did not state reasons for cutting the guideline from $8,000 to $4,000 other than saying $4,000 exceeded the unidentified needs of Child. It added at the end of its hearing that the award was in Child's best interest, but without explanation. These conclusory findings do not provide reasons why a reduction from the guideline amount is justified and consistent with Child's best interests. (*Macilwaine*, *supra*, 26 Cal.App.5th at pp. 538–539; *Y.R.*, *supra*, 9 Cal.App.5th at p. 985, fn. 16; *S.P.*, *supra*, 4 Cal.App.5th at p. 935.)

This case must be reversed and remanded because of the court's failure to comply with the statutory requirements of setting forth the reasons why it deviated downward from the guideline amount and why its below-guideline award is in the best interests of the Child. (*Y.R.*, *supra*, 9 Cal.App.5th at p. 985; *Macilwaine*, *supra*, 26 Cal.App.5th at pp. 538–539.) On remand, the statement of decision should identify the monthly expenses necessary to raise Child to Father's attainable standard of living, though it does not need to be as detailed as the order in *S.P.* (See *Macilwaine*, at p. 539, fn. 31.) If the court on remand finds that Child's best interest is served by an amount less than the guideline amount, it must articulate why it reached that conclusion, based on statutory guidelines, and why the lower amount is in Child's best interest. (§ 4056, subd. (a); *Y.R.*, at p. 985, fn. 16.)

15

DISPOSITION

The order of the court setting child support at $4,000 per month is reversed and remanded with directions to the trial court to independently ascertain Child's needs based upon Father's financial circumstances and station in life, not on an objective standard or on historical expenses. There is no basis for hardship deductions for Father for his other children. We express no view on the propriety of a downward adjustment, but if the trial court sets support below the guideline amount, the resulting order must clearly articulate the reasons why the guideline amount exceeds Child's needs and why the lower amount is in Child's best interests. Costs on appeal are awarded to appellant Mother.

BENKE, Acting P. J.

WE CONCUR:

AARON, J.

DATO, J.

16