Filed 3/14/25  Marriage of Malcolm and Corless CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of JEREMY MARK MALCOLM and DOMINICA ANNE CORLESS. | |
| JEREMY MARK MALCOLM,<br><br>    Appellant,<br><br>v.<br><br>DOMINICA ANNE CORLESS,<br><br>    Respondent. | A171560<br><br>(Alameda County<br>Super. Ct. No. HF19042384) |

Jeremy Malcolm, appearing in propria persona, appeals from a trial court order requiring him to pay $1,177 per month in child support to his ex-wife, Dominica Corless, who also appears in propria persona.  Malcolm claims the court erred in imputing income to him and denied him the opportunity to respond to one of the court's bases for doing so.  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Malcolm and Corless married in 2006 and have two children, a daughter born in 2007 and a son born in 2010.  Corless filed for divorce in late 2019, and a judgment of dissolution was entered in August 2020.  Under

a stipulated agreement, the parties have joint legal custody of the children and Corless has sole physical custody of them.  At the time of the divorce, both parties were unemployed, and the issue of child support was reserved.

In October 2021, at Corless's request, the trial court entered an order directing Malcolm to pay $919 per month in child support.  The parties stipulated to increasing the payment to the guideline child support amount of $1,200 per month in May 2023, based on Malcolm's reported monthly gross income of $4,990.

In June 2024, the Alameda County Department of Child Support Services (Department) moved to modify the child support order based on changed circumstances.  Corless submitted a declaration stating that Malcolm had been arrested in Australia for "importing prohibited tier 2 goods and making misleading statements to officials" and was currently living in that country with his parents.  She requested two additions to the $1,589 in monthly income he now disclosed:  the amount she paid him for his interest in their family home ($1,966) and the amount he saved in rent by living with his parents (which she estimated at $1,518, based on comparable rental properties).

Both parties and the Department appeared at a contested hearing in August 2024.  Corless was represented by counsel, and Malcolm, who is an attorney and appeared remotely from Australia, was not.  Malcolm explained that he was living in the United States until the previous year, when he went to Australia for a visit.  Upon arriving, he was arrested and incarcerated for about a month, after which he began living with his parents.  He said he was fighting the criminal charges, and most of the income he currently received was through an Australian grant to start a small business.  He claimed he lived with his parents "out of necessity," since his income was not enough to

2

afford rent, and he objected to any amount saved in rent being imputed to his income.

After assuring Malcolm that it would not take his "criminal situation" into account, since he was presumed innocent, the trial court focused on his previous employment. Malcolm admitted he had "a decent job" while in the United States, which he lost once he was arrested. Having ascertained that Malcolm made $4,990 per month in his previous employment, the court said it was "concerned" about his "basically being under-employed and not providing financial assistance" to the children. Malcolm responded that he was unable to find comparable employment, noting he had received "a firm offer of a job" that was withdrawn when he disclosed the pending criminal charges.

The trial court asked the Department's counsel what the guideline amount would be based on a monthly income of $4,990, and counsel responded it would be $1,177. Counsel also noted that Malcolm had been making the currently ordered monthly payments of $1,200, which he reported was out of the $1,966 Corless owed him each month for his interest in the house.

The trial court then addressed Malcolm as follows: "I'm not going to apply the rental income to you, given your current situation, but the Court does find, based on your testimony, that you have the ability to earn more. [¶] I understand that your current situation does not necessarily allow you to do so, but . . . given the amount of time that you have been in Australia, the amount of time . . . that's passed since the start of your criminal case in January 2024, the fact that you have been out of custody for over six months, you have not shown an inability to work. [¶] . . . [E]ven taking into consideration your testimony that the criminal charges have affected your

ability to find work, the Court still finds that you are able to work and able to find a high level of work based on your experience and ability to work, therefore the Court is imputing your prior self-employment income of [$]4,990 from 2023 to the guideline child support amount."

When given the chance to respond, Malcom insisted that it was "absolutely not in the realm of reality" for him to earn $4,990 per month, emphasizing that "no employer" was willing to hire him while he faced criminal charges. The court then stated that it did "not find it credible that no employer would be willing to employ [him] at this time."

The trial court ordered that Malcolm pay $1,177 per month in child support, "the guideline amount, by imputing the income of [$]4,990 self-employment income" from the 2023 stipulated order. In ruling, the court also stated that it found he was "essentially receiving a financial benefit by being able to stay in a spare bedroom with [his] parents for free," but it did not impute any additional income to him as a result.

## II.
### DISCUSSION

#### A. *General Legal Standards*

To order child support, a trial court must begin by calculating the guideline amount under Family Code section 4055, which " 'sets forth a statewide uniform guideline for determining the appropriate amount of child support. The term "guideline," however, is a euphemism. The support amount rendered under the guideline's algebraic formula "is intended to be presumptively correct in all cases, and only under special circumstances should child support orders fall below the child support mandated by the guideline formula." ' " (*Y.R. v. A.F.* (2017) 9 Cal.App.5th 974, 983.)

We review an order of child support for an abuse of discretion. (*Y.R. v. A.F., supra,* 9 Cal.App.5th at p. 982.) The trial court's interpretation of the

4

law is reviewed de novo, and its factual findings are reviewed for substantial evidence. (*County of San Diego v. P.B.* (2020) 55 Cal.App.5th 1058, 1068.) In particular, "[w]hether earnings should be imputed to an unemployed parent is a matter 'addressed to the trial court's sound discretion.' " (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1051, fn. 3.)

On appeal, we presume the trial court's order was correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) Thus, an appellant has the burden to demonstrate reversible error. (*Id.* at p. 609.) To carry this burden, an appellant " ' "may not . . . rest on the bare assertion of error but must present argument and legal authority on each point raised. [Citation.]" [Citations.] When an appellant raises an issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' " (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) Malcolm is not entitled to "special treatment" because he is self-represented, and these rules apply equally to him. (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 524.)

### B.     Malcolm's Challenges to the Trial Court's Order Fail.

With the above legal standards in mind, we turn to Malcolm's claims on appeal. Malcolm's primary claim, addressed in two argument subheadings, is that the imputation of income "was unsupported by evidence and contrary to California law." (Boldface and some capitalization omitted.) Malcolm contends that the trial court's reliance on his "prior earnings in the high-paying San Francisco Bay Area tech sector . . . ignored significant differences in labor market conditions and [his] current inability to work due to stigma associated with serious criminal charges." But the trial court determined that his claim that he was unemployable because of the pending charges was not credible—a finding we cannot second-guess—and there was no evidence

5

presented of any differences in the respective employment markets that would reduce his earning capacity in Australia. Malcolm fails to address these circumstances, and he also fails to explain why his recent past income did not constitute substantial evidence of his earning capacity. Thus, he has not demonstrated that the court abused its discretion by imputing income to him.

Malcolm also claims the trial court's ruling was "procedurally unfair." (Boldface and some capitalization omitted.) According to him, after "initially indicat[ing it] would not impute income based on rent-free accommodation," the trial court ultimately did so, depriving him of a chance to respond. We disagree with Malcolm's interpretation of the record. Although the court found he was "receiving a financial benefit" by not paying rent, it did not increase the guideline amount that was calculated solely using his past income or otherwise suggest it was imputing more income to him based on his living condition. Moreover, Malcolm fails to cite any legal authority in support of his argument. Thus, this claim fails as well.

## III.
### DISPOSITION

The trial court's August 13, 2024 order is affirmed.

_____

Humes, P.J.

WE CONCUR:


_____

Langhorne Wilson, J.



_____

Smiley, J.

*In re Marriage of Malcolm and Corless*  A171560

7