Filed 10/27/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| S.P.,<br><br>    Petitioner and Appellant,<br><br>    v.<br><br>F.G.,<br><br>    Respondent. | B268249<br>(Los Angeles County<br>Super. Ct. No. BF046789) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Robert E. Willett, Judge. Affirmed.

Dennis G. Temko, Stephen Temko for Petitioner and Appellant.

Jaffe and Clemens, Daniel J. Jaffe, David M. Luboff for Respondent.

Petitioner and appellant S.P. (mother) had a child (E.P.) with respondent F.G. (father). Mother appeals from the trial court's child support order requiring father to pay mother $14,840 per month as well as pay, directly to the providers, E.P.'s expenses related to extracurricular activities, health, and education.

Mother argues the order should be reversed for the following reasons: (1) the trial court abused its discretion by (a) using E.P.'s historical and current expenses to determine the appropriate amount of child support, and (b) failing to properly consider father's extraordinarily high income when determining the appropriate amount of support; (2) there was insufficient evidence it was in E.P.'s best interest to award support in an amount that was below the figure calculated under the statewide uniform guideline; and (3) the trial court erred by failing to state the reasons why the amount of support ordered was (a) consistent with the child's best interest, and (b) different from the guideline amount. We affirm the order because the trial court rationally deviated from the guideline and properly ordered support that was not only in the best interest of E.P., but also provided a standard of living consistent with that of a financially privileged child.

## FACTUAL BACKGROUND

Fourteen-year-old E.P. lived with mother in Pacific Palisades, California. Father never lived with mother and E.P., and never had custody of E.P.

Mother was an actress who starred in a Swedish reality television show. Father was a "successful business man," "own[ed] an interest in approximately 131 separate entities," had a net worth in excess of $400 million, and earned an annual net income of $4,061,815.

Shortly after E.P. was born, mother and father agreed father would financially support E.P. by making monthly payments of approximately $9,200 to mother.[1] Father complied with the agreement until early 2015, when he increased the support to $10,000. Father also separately paid for E.P.'s educational expenses, extracurricular activities, and medical expenses.

---

[1] Mother's claim that she was coerced into entering the agreement was rejected by the trial court.

## PROCEDURAL BACKGROUND

### A.    "Proposed Needs" Claimed By Mother

When E.P. was 10 years old, mother filed a petition in California to establish the parents' legal relationship with E.P., and more than two years later, filed a request for order (RFO) for child support from father.  The RFO included mother's supporting declaration as well as her income and expense declaration.  Mother sought an amount of child support that was consistent with the statewide guideline provided by Family Code section 4055.[2]  Mother made the alternative argument that, if the court declined to abide by the guideline amount, monthly support should not be less than $35,000.  Mother also requested the trial court order father to pay all of E.P.'s expenses for medical care, education, and extracurricular activities.  Father argued an appropriate child support award would be $10,000 per month, plus educational and medical expenses.

Mother filed a second income and expense declaration that was virtually identical to the first one.  In it she claimed "proposed needs" of $78,155 per month, of which she allocated $69,420 to E.P.

---

[2]    Unless otherwise specified, all further statutory references are to the Family Code.

4

There were several relevant categories of claimed needs/expenses asserted by mother and discussed by the parties. The categories are broken down below and all monetary figures referenced therein are attributed to claimed *monthly* expenses.[3]

The most significant need claimed by mother was for housing. E.P. and mother lived in a 2,700 square foot, two-story, three-bedroom Pacific Palisades house. The rental cost for that residence was approximately $5,480.[4] Mother sought a more extravagant living arrangement and claimed her expense for acceptable housing was $34,950 (cost of renting a furnished home, insurance, gardener, pool service, live-in housekeeper/assistant, and household supplies), of which she attributed $32,900 to E.P., including all of the $30,000 anticipated rental expense. Mother declared she was "not requesting a home that [was] comparable in price to [the home father] own[ed] and reside[ed] in"—a home that carried a monthly mortgage expense of $62,020.

---

[3] We have excluded the categories of health care and education as father was ultimately ordered to pay these expenses directly to the providers. We have also excluded the claimed need of $833 for charitable contributions as mother does not contend, on appeal, that charitable contributions are considered to be a reasonable need of a child.

[4] Although mother testified at her deposition that the monthly rental cost of the home was $5,470, she stated in her declaration that it was $5,480.

The second most costly category of need was "entertainment, gifts and vacation." Mother calculated these diversions as requiring $8,300, of which $4,725 was apportioned to E.P.

The funding mother claimed was needed for food was less than the amount for entertainment, gifts, and vacations. In this respect, mother estimated a total of $6,000 was required for groceries and "eating out," of which she allocated $3,100 to E.P.

Somewhat lesser claimed expenses were for clothing and dry cleaning ($3,750, all of which mother assigned to E.P.); automobile, including lease payments for a Mercedes-Benz GL550, automobile insurance, gasoline, registration and license fees, automobile club membership, car washing and detailing, and public parking ($3,371, all of which she attributed to E.P.); and utilities and phone service ($1,900, of which $1,700 was allocated to E.P.).

Finally, there was the category of "other" expenses. The claimed needs for this category (skin care and "beauty," hair care, manicures and pedicures, "massages/spa," pet care and pet supplies, toys, books and magazines, Bel Air Bay Club membership, flowers, and allowance) were valued at $2,790, of which $2,545 was attributed to E.P. Mother explained E.P. required $1,200 every month for cosmetology, massages, and spa

6

treatments because E.P. was "extremely beautiful" and mother knew she would "be a top model."

### B. Trial Court's Order

The trial court heard mother's RFO without taking testimony and, just over two weeks later, issued its order. It acknowledged the parties had agreed to the information that was inputted into the DissoMaster[5] and calculated a guideline support amount of $40,882. The trial court deviated from that figure and ordered father to pay child support of $14,840 per month and, in addition, to pay directly to the providers all reasonable medical expenses for E.P., including medical insurance premiums and all of her private school tuition, school expenses, and reasonably incurred expenses for extracurricular activities.

In support of the order, the trial court provided a detailed written explanation for the ruling, which we quote at length: "[T]he current arrangement for support which has been in effect for many years beyond 2002, is not the result of coercion or threats by [f]ather. It is not credible to this court that [m]other

---

[5] "The DissoMaster is one of two privately developed computer programs used to calculate guideline child support as required by section 4055, which involves, literally, an algebraic formula." (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 523-524, fn. 2.)

has accepted the support payments until recently on account of asserted threats made when [E.P.] was an infant.

"[¶] . . . [¶]

"Neither of [mother's income and expense declarations] set out any current expenses for [E.P.], save perhaps medical insurance provided by [m]other . . . .

"[¶] . . . [¶]

"Some of [m]other's 'Proposed Needs' appear to have no factual support or appear purposely inflated and facially unreasonable.  While [m]other estimates summer camp at $10,000 annually ($833/month), she acknowledges [E.P.] does not attend summer camp.  Mother testified at deposition that she and [E.P.] have lived in their home since 2010, but that it is 'extremely rundown.'  No specificity for that characterization has been offered.  No evidence was offered that she has attempted to find a comparably priced home that isn't 'rundown.'  Some of the proposed expenses are simply without any plausible evidentiary foundation. . . .

"[¶] . . . [¶]

"The court notes that [m]other offers no evidence that any of [E.P.]'s needs are not currently being met.  This observation is not intended to suggest that [m]other carries any burden to prove that current needs are not being met and the court acknowledges she has no such burden.

"Father offers no evidence of what are [E.P.]'s reasonable needs, apart from what has been the conduct of the parties [regarding father's payments].

"The evidence does not provide a calculable monthly expense [f]ather has paid annually or monthly for [E.P.]'s benefit, excepting her private school tuition and the $10,000 monthly he now pays [m]other for his daughter's support.

"The court finds on the totality of the evidence that the conduct of the parties over the last several years is some evidence of the reasonable needs for [E.P.]'s support. Specifically, [f]ather's payment of $9,200 monthly (recently increased to $10,000) and his payment of all [E.P.]'s educational, extra-curricular and medical expenses reflects a consensual arrangement between the parties for her care.

"[T]he continuation of [father's payment] arrangement over the years is some evidence of the parties' beliefs that [E.P.]'s reasonable needs were being met. . . .

"[¶] . . . [¶]

"Considering all of the evidence, including the 'Proposed Needs' [m]other has identified, the court finds that the following monthly expenses are reasonable and consistent with [section] 4053 principles: all housing rental expense currently incurred by

9

[m]other is fairly attributable to [E.P.]'s needs ($5740);[6] while the fair inference is that the 'Proposed Needs' attributable to [E.P.] for Utilities/Phone ($1700) are proposed for a more expensive home, the court will adopt those as a proxy for reasonable expenses for those categories; and, the household grocery and 'Eating Out' expense ($2900) mother proposes for [E.P.]  In addition, some reasonable monthly amount for vacations and entertainment ($2000), auto expense ($700), clothing and dry cleaning ($1000) and 'Other' ($700), are also found to be reasonable and consistent with [E.P.]'s best interests. The amounts total $14,840 monthly, exclusive of medical and educational expenses.  These amounts are found by the court to be consistent with [f]ather's station in life . . . .

"Based on the evidence the court finds that the appropriate child support payable directly by [f]ather to [m]other shall be $14,840 monthly; in addition, [f]ather shall pay directly to the providers all reasonably necessary medical expenses for [E.P.], including medical insurance premiums.  As child support add-ons, [f]ather shall pay all of [E.P.]'s private school tuition and school expenses and reasonably incurred extra-curricular expenses.  The court finds that such amounts are a substantial

_____

[6]     It appears the trial court transposed the numbers constituting the actual housing rental in E.P.'s favor by $270 per month; as noted above, mother testified that the monthly rent was $5,470.

increase over the amounts currently being paid, these higher amounts will supply [E.P.] with a high/affluent standard of living, and will meet her reasonable needs, taking into account all of the evidence and the . . . [s]ection 4053 principles required to be considered. . . . The court finds that ordering support as set forth herein is consistent with [E.P.]'s best interests.

"Considering the parents' stations in life, and particularly [f]ather's station in life and the principles articulated in [section] 4053, particularly [section] 4053[, subdivision] (f), the court . . . determines that the amount of support ordered herein is consistent with [E.P.]'s best interests. . . .

"The court concludes, given all the evidence, the presumption that the guideline amount of $40,882 is correct has been rebutted by a preponderance of admissible evidence and the court concludes that amount would be unjust or inappropriate because [f]ather has an extraordinarily high income and the guideline amount for child support 'would exceed the needs of the' child. . . . In so concluding, the court finds that it has adhered to the principles set forth in [section] 4053.

"The court has set forth its reasons herein for the amount of support differing from guideline . . . and its reasons the amount of support ordered is consistent with the best interests of the child . . . . For purposes of completeness, the court finds that

11

[f]ather has zero percentage of time as the child's primary physical custodian compared to [m]other. . . ."[7]

## DISCUSSION

### A.    Applicable Law

"'California has a strong public policy in favor of adequate child support. [Citations.] That policy is expressed in statutes embodying the statewide uniform child support guideline. (See . . . §§ 4050-4076.) "The guideline seeks to place the interests of children as the state's top priority." (§ 4053, subd. (e).) In setting guideline support, the courts are required to adhere to certain principles, including these: "A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." (§ 4053, subd. (a).) "Each parent should pay for the support of the children according to his or her ability." (§ 4053, subd. (d).)

---

[7]    The trial court referenced several sections of the Family Code in its order, some of which we have included in the quoted passage. However, we have omitted several fragments of Family Code citations because, while they inform us of the statutes upon which the trial court relied, they are not consistent with the form provided in the California Style Manual. The citations we have omitted indicate that, in addition to the statutes referenced in the quoted text, the trial court relied on sections 4055, subdivision (b), 4056, subdivisions (a) and (b), and 4057, subdivisions (a) and (b).

12

"Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children." (§ 4053, subd. (f).)' [Citation.]" (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 640, quoting *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283 (*Cheriton*); *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1048 (*Cryer*).)

The "'statewide uniform guideline' [under section 4055] determin[es] child support according to a complex formula[8] based on each parent's income and custodial time with the child. [Citations.]" (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1245; see also *In re Marriage of Hall* (2000) 81 Cal.App.4th 313, 317.) "The term 'guideline,' however, is a euphemism" (*In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183 (*Hubner*)) because the amount generated by the guideline formula is

---

8    The formula for determining child support is CS = K[HN - (H %)(TN)]. (§ 4055, subd. (a).) CS is the child support amount, K is the amount of both parents' income to be allocated for child support, HN is the high earner's net monthly disposable income, H percent is the approximate percentage of time during which the high earning parent will have primary physical responsibility for the child, and TN is the total net monthly disposable income of both parents. (§ 4055, subd. (b); *DaSilva v. DaSilva* (2004) 119 Cal.App.4th 1030, 1032-1033.) "Determining child support under the guidelines has been criticized as a 'complex and unduly costly' process 'which requires the use of a computer and which is not understood by anyone, least of all the affected parties.'" (*Cheriton, supra*, 92 Cal.App.4th at p. 284.)

presumptively correct (§§ 4053, subd. (k), 4057, subd. (a)).  Under section 4057, the guideline figure "is a rebuttable presumption affecting the burden of proof and may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case, consistent with the [policy] principles set forth in Section 4053."  (§ 4057, subd. (b).)

The amount of child support may vary from the guideline when the parent paying the support "has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children."  (§ 4057, subd. (b)(3).)  "When the extraordinarily high earning supporting parent seeks a downward departure from a presumptively correct guideline amount, it is that parent's 'burden to establish application of the formula would be unjust or inappropriate,' and the lower award would be consistent with the child's best interests."  (*Hubner*, *supra*, 94 Cal.App.4th at p. 183; see also *In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1328; §§ 4053, subd. (k), 4056, subd. (a)(3), 4057; & Evid. Code, § 500.)  A party's burden of proof may be satisfied with evidence supplied by the party without the burden.  (*Perotti v. Sampson* (1958) 163 Cal.App.2d 280, 283.)

"What constitutes reasonable needs for a child varies with the circumstances of the parties."  (*In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 129.)  "[I]n the case of wealthy

14

parents . . . the well-established principle [is] that the 'child's need is measured by the parents' current station in life.' [Citations.]" (*Cheriton, supra*, 92 Cal.App.4th at p. 293; accord, *Cryer, supra*, 198 Cal.App.4th at p. 1050.)  A child ""'is entitled to be supported in a style and condition consonant with the position in society of its parents." [Citation.]  "The father's duty of support for his children does not end with the furnishing of mere necessities if he is able to afford more." [Citation.]'  [Citation.]  "'Clearly where the child has a wealthy parent, that child is entitled to, and therefore 'needs' something more than the bare necessities of life.'" [Citation.]  [A] parent's 'ability' to support a child may depend upon whether the supporting parent is merely rich or is very rich, and 'this discrepancy can affect the [trial court's determination as to the] child's needs.'  [Citation.]" (*Hubner, supra*, 94 Cal.App.4th at p. 187.)

### B.    Historical and Current Expenses

Mother contends the trial court abused its discretion in awarding child support to E.P. because it based the award on E.P.'s historical expenses paid by father without properly factoring father's wealth into the equation.  She also argues the trial court improperly considered current out-of-pocket costs to support E.P., but not potential future expenses.  As explained below, the trial court did not abuse its discretion.

15

## 1. Standard of Review

A child support award will not be overturned absent a showing of a clear abuse of discretion resulting in prejudicial error. (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34.) "[W]e do not substitute our judgment for that of the trial court, and we will disturb the trial court's decision only if no judge could have reasonably made the challenged decision." (*Cryer, supra,* 198 Cal.App.4th at pp. 1046-1047; see also *In re Marriage of Henry* (2005) 126 Cal.App.4th 111, 116.) In reviewing a child support order, however, "'we are mindful that "determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule." [Citation.]' [Citation.]" (*In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1312; see also *Cryer, supra,* 198 Cal.App.4th at p. 1047.)

## 2. Analysis

### a. Historical Expenses and Father's Wealth

A trial court's assumption that a child's historical expenses define the child's need can be "erroneous in the case of wealthy parents, because it ignores the well-established principle the 'child's need is measured by the parents' current station in life.'

16

[Citations.]" (*Cheriton*, *supra*, 92 Cal.App.4th at p. 293.) But, contrary to mother's assertion, the trial court did not assume that E.P.'s needs were defined by the historical expenses paid by father.

The trial court stated the conduct of the parties, including the historical payments made by father, was merely "*some* evidence of the reasonable needs for [E.P.]'s support," and was only "*some* evidence of the parties' beliefs that [E.P.]'s reasonable needs were being met." (Italics added.) Indeed, the trial court awarded child support paid to mother (as opposed to providers) in an amount that was approximately 50 percent higher than father had been voluntarily paying mother for 13 years.

In determining the amount of monthly child support ($14,840), the trial court awarded the full amount requested by mother for some expenses and discounted amounts requested by mother for other expenses. The trial court specifically stated the amount awarded for child support was "consistent with [f]ather's station in life." Although mother contends E.P. was entitled to a support award "where historical monies played *no role*," (italics added) she fails to cite any authority supporting that proposition.[9]

---

[9] Mother's reliance on *Cheriton*, *supra*, 92 Cal.App.4th at page 293 and *In re Marriage of Catalano* (1988) 204 Cal.App.3d 543, 551 is misplaced. Those cases do not stand for the proposition asserted by mother that historical monies paid for

17

b.    Current Expenses

The record does not support mother's claim that the trial court ignored E.P.'s potential future expenses in determining E.P.'s reasonable needs.  As stated, mother proposed father fund a much larger and more lavish home than the Pacific Palisades home in which she and E.P. resided.  Obviously, a similarly located larger home would generate higher utility bills.  In this respect, the trial court awarded all of mother's proposed needs for E.P. concerning utilities and phone service despite making the reasonable inference (not disputed by mother) that those expenses corresponded to a larger home, not the current bills for the Pacific Palisades home.

The award for expenses related to extracurricular activities was similarly independent of current costs.  In this category of the income and expense declaration, mother listed a number of activities including, but not limited to, dance lessons, singing lessons, horseback riding, and summer camp.  There is no evidence in the record demonstrating E.P. had an interest in

child support or historical expenses play no role in calculating child support.  Instead, they hold a child's historical expenses do not define the child's current needs (*Cheriton*, *supra*, 92 Cal.App.4th at p. 293) and a trial court may not limit increases in child support to the standard of living enjoyed before or during the marriage (*In re Marriage of Catalano*, *supra*, 204 Cal.App.3d at p. 551).  Here, the trial court did not limit the child support to either an amount paid by father in the past or E.P.'s historical expenses.

horseback riding or had attended summer camp, and the trial court recognized as much. Nonetheless, the trial court broadly ordered father to pay expenses reasonably incurred for future extracurricular activities. On appeal, father does not dispute that, if E.P. is (or becomes) interested in such activities, he is (or will be) required to pay the reasonable costs associated with them. Indeed, at oral argument before this court father's counsel emphasized, "[I]f E.P. needs dance lessons or singing lessons, whatever, it's covered." The award for extracurricular activities was in no sense limited to current expenditures.

Finally, the trial court awarded nearly the full amount requested by mother ($2,900 of the claimed $3,100) for groceries and "eating out." Mother never made the representation that the $3,100 figure was what she was currently spending on these items. In fact, the trial court specifically acknowledged, without any objection or dispute by mother, that this category on mother's income and expense declarations, as well as some others, did not reflect current out-of-pocket costs.

While we recognize the trial court awarded support for housing in an amount commensurate with the amount currently being paid by mother for rental of the Pacific Palisades home, we are not inclined to interpret that ruling as the product of the trial court's failure to consider the other evidence regarding the appropriate need, both present and future, for a suitable home.

19

The trial court indicated it "[c]onsidered all of the evidence, including the 'Proposed Needs' [m]other . . . identified . . . ." We accept that representation and, in reviewing the support order in its totality, it is clear that the trial court did not exclude from consideration the need to cover future costs. Mother identifies nothing specific in the record to indicate otherwise.

## C. Sufficiency of the Evidence

Mother contends there was insufficient evidence that the below-guideline child support award was in E.P.'s best interest. In making this argument, mother focuses on the legitimacy of her claimed expenses. Mother's claim lacks merit.

### 1. Standard of Review

We review factual findings regarding a child support award for substantial evidence. (*Cryer, supra,* 198 Cal.App.4th at p. 1047; *In re Marriage of Chandler, supra,* 60 Cal.App.4th at p. 128.) That review requires us to consider the record in a light most favorable to the respondent, and to presume the existence of every fact that reasonably could be deduced from the evidence. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053, superseded by statute on other grounds as stated in *Eller Media Co. v. City of Los Angeles* (2001) 87 Cal.App.4th 1217, 1219, fn. 3.)

20

## 2. *Analysis*

There was sufficient evidence from which a reasonable trier of fact could have concluded, as the trial court did, that the monthly support figure dictated by the guideline ($40,882) would be inappropriate and a lower award would be consistent with the E.P.'s best interest.

While the trial court awarded substantial sums for categories such as vacations and entertainment ($2,000/month) and groceries and restaurant meals ($2,900/month), it rationally concluded some of mother's proposed expenses were unreasonable. As noted, the trial court's most significant departure from mother's claimed expense was in the category of E.P.'s housing. Mother stated that in order to meet the proposed need for appropriately furnished housing, father would have to pay $30,000 per month as rental cost. But, there was evidence the $30,000 figure was partly based on homes mother identified on the market with five to six bedrooms, and up to seven bathrooms. Some of those homes also had amenities such as a chef's kitchen, a guest house, hand-painted ceilings, a home theater, a wine cellar, and/or a salt water pool. Although mother described her residence as being an "extremely run down [*sic*] house," mother's assessment was undercut by photographs of the home submitted by father, as well as the fact that a production studio used the home to film mother's reality television show.

21

The trial court could have reasonably concluded that a home rental expense of $30,000 per month would exceed the reasonable needs of a wealthy parent's child, and therefore would not be in E.P.'s best interest.

The trial court properly declined to rubber stamp mother's claimed needs or to simply defer to the guideline amount. It found "[s]ome of [m]other's 'Proposed Needs' appear to have no factual support or appear purposely inflated and facially unreasonable," and "[s]ome . . . are simply without any plausible evidentiary foundation. . . ." Mother's credibility in stating the proposed needs was a legitimate issue for the trial court. Indeed, in analyzing a party's income and expense declaration, it is "the duty of the trial judge to remain ever vigilant to exaggeration and falsification. Where such is uncovered the credibility of the declarant is put in issue as is the probative value of the declaration." (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 362.)

The mostly arbitrary figures included in mother's income and expense declaration, as well as her questionable credibility, torpedoed her request for the guideline child support or, in the alternative, a minimum of $35,000. Sufficient evidence supported the trial court's downward departure from these figures.

## D.    Trial Court's Statement of Reasons

Citing section 4056, mother contends the trial court erred by failing to state the reasons why the amount of child support ordered was consistent with the E.P.'s best interest, and why the ordered child support differed from the amount generated by the guideline formula.  Given the trial court's detailed explanation of its reasons for the child support award, there is no merit to this contention.

### 1.    Applicable Law

Whenever a trial court orders a child support amount that differs from the guideline amount it is required to state, either in writing or on the record, "the reasons the support ordered differs from the guideline formula amount" and why "the support ordered is consistent with the best interests of the [child]."  (§ 4056, subd. (a)(2), (3).)  The trial court must "render the specified information sua sponte when deviating from the guideline formula." (*Rojas v. Mitchell* (1996) 50 Cal.App.4th 1445, 1450.) The statement of reasons contemplated by section 4056, subdivision (a)(3) is not just a conclusory finding that the variance from presumptively-correct formula support is in a child's best interest.  The trial court must articulate why the deviation is in the child's best interest.  (*McGinley v. Herman* (1996) 50 Cal.App.4th 936, 945.)  A "child support order[] that

23

deviate[s] from the presumptively-correct formula amount without an accompanying [section 4056, subdivision (a)] statement of information and reasons will be reversed on appeal . . . unless the requisite findings can be implied from the record . . . ." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2016) ¶ 6:498 pp. 6-299 to 6-300; see also *Hubner, supra*, 94 Cal.App.4th at p. 183; *Rojas v. Mitchell, supra*, 50 Cal.App.4th at p. 1450.)

### 2. *Analysis*

The trial court applied the principles of section 4053 and found the amount of child support ordered was consistent with father's station in life and in E.P.'s best interest. We have quoted extensively from the trial court's order, including its factual findings. It is not necessary to repeat all of the factual determinations made by the trial court, but it is worth recognizing again that the trial court considered father's wealth/status and made specific findings that many of mother's articulated "proposed needs" were purposely inflated, factually unsupported, unreasonable, and/or not credible. The trial court explained its support award was in E.P.'s best interest because it provided her with a high/affluent standard of living. The parties were not left without an understanding of why the trial court deviated from the guideline.

24

## DISPOSITION

The trial court's order is affirmed.  F.G. is awarded his costs on appeal.

**CERTIFIED FOR PUBLICATION**


KUMAR, J.*


We concur:


KRIEGLER, Acting P. J.


BAKER, J.

---

*       Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.