Filed 6/15/21  Marriage of D.M. and G.P. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of D.M. and G.P. | D076395 |
| D.M., | |
| Appellant, | (Super. Ct. No. D554885) |
| v. | |
| G.P., | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, John B. Scherling, Judge.  Affirmed.

Stephen Temko for Appellant.

Gemmill & Associates and Sondra P. Gemmill; Garrett Clark Dailey for Respondent.

Appellant D.M. (mother) appeals from an order modifying and reducing the amount of child support paid by respondent G.P. (father) from a stipulated amount of $6,500 per month to $3,307 per month.  She contends father did not meet his burden to demonstrate a material change of circumstances so as to support the family court's order.  She further contends

father did not prove their child's financial needs had diminished under *In re Marriage of Usher* (2016) 6 Cal.App.5th 347 (*Usher*), and he cannot do so where the evidence assertedly shows the child would be ejected from mother's home as a result of the court's order.  We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

The record consists of a clerk's transcript and a settled statement; there is no reporter's transcript.  Our factual background is drawn from the limited record and settled statement.  "[W]e recite the facts in the light most favorable to the prevailing party . . . ."  (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 747.)  We will presume the court made all findings of ultimate fact necessary to support the judgment for which substantial evidence exists in the record.  (See *McMillin Companies, LLC v. American Safety Indemnity Co.* (2015) 233 Cal.App.4th 518, 532, fn. 21 [summarizing doctrine of implied findings].)[1]

The parties divorced after a marriage lasting two and a half years.  In March 2017, they entered into a stipulation that father would pay mother $6,500 per month in child support.  This was more than the statutory

---

[1]    Authorities are in dispute over whether the doctrine of implied findings applies when parties use a settled statement.  (Compare *In re Marriage of Fingert* (1990) 221 Cal.App.3d 1575, 1580 [finding doctrine inapplicable] and *In re Marriage of Seaman & Menjou* (1991) 1 Cal.App.4th 1489, 1494, fn. 3 [same] with *In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248-1249 [applying doctrine]; see discussion in *A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1281-1282.)  We agree with the *McHugh* court's assessment that *Fingert* "cited no authority establishing an exception to the implied findings doctrine for an appeal based on a settled statement" and that *Seaman & Menjou* followed *Fingert* without analysis.  (*McHugh*, at p. 1249.)

2

guideline support amount[2] of $2,200 per month, which was calculated based on father's $29,166 in monthly wages and salary and 50 percent custody of their child. The parties acknowledged father's income included dividend and/or return of capital that "fluctuates greatly." The court accordingly ordered father to pay $6,500 per month in child support effective April 1, 2017.

About two years later, father, who was then 82 years old, requested an order to reduce the amount of child support to the guideline amount of $3,456 per month. Father's guardian ad litem, Leigh Galyon, submitted a supporting declaration stating that father was in "deteriorating health" and "was recently diagnosed with Parkinson's and is in the process of learning what that means for his future both medically and emotionally." She averred he "does suffer from some short term memory loss and cannot recall the circumstances surrounding the negotiation of the current child support amount. [Father's] monthly expenses are increasing dramatically as he will be required to have in home nursing care on a part time basis, he will likely need to hire a driver, and he is required by [mother] to have supervision for his visitation with [the child]." Galyon stated that she had prepared a

---

[2] To implement the strong public policy in favor of adequate child support, courts are required to calculate child support under statutory guidelines. (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 640-641, citing Family Code sections 4052-4055.) " ' "[A]dherence to the guidelines is mandatory, and the trial court may not depart from them except in the special circumstances enumerated in the statutes." ' " (*Sorge,* at p. 641.) Under Family Code section 4057, the guideline amount of child support, which is calculated by applying a mathematical formula to the parents' incomes, " 'is a rebuttable presumption affecting the burden of proof and may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case, consistent with the [policy] principles set forth in [Family Code s]ection 4053.' " (*S.P. v. F.G.* (2016) 4 Cal.App.5th 921, 930.)

3

DissoMaster[3] calculation showing father's income, dividends and capital gains, a five percent timeshare for father, and income imputed to mother of $2,080.[4]

Mother, who was then 37 years old, opposed the request. In a supporting declaration, she discussed her and father's 2016 and 2017 meetings with a family law facilitator and their agreement that father pay $6,500 in monthly child support. She explained the parties agreed $6,500 was the amount in their child's best interests to maintain their standard of living and the child's needs would be adequately met by that amount. She stated the child's standard of living including a rental home in the child's school district and "extensive international travel." Mother stated that in 2018, she informed father of her intention to move to Finland. She also discussed her current husband's job, explaining they were not married to each other in 2017 when support was calculated, and that she worked from home as an artist. Mother stated, "The only reason [father] is requesting modification of this amount is that he has a Guardian ad Litem who has taken it upon herself to declare that the amount [he] agreed to pay is somehow unjust. [Father] may legitimately oppose my move-away request,

_____

[3] " 'The DissoMaster is a privately developed computer program used to calculate guideline child support under the algebraic formula required by [Family Code] section 4055.' " (*Y.R. v. A.F.* (2017) 9 Cal.App.5th 974, 980, fn. 10.)

[4] Galyon recounted: "[Father] receives monthly pension income of $8,413, social security income of $2,519 per month, and non-taxable income of $1,273 per month. For the calendar year 2018, [father] earned taxable dividend income on his investments of $5,440 per month and had capital gains of $12,497 per month. Although the dividends and capital gains were not actual income into [father's] bank accounts, they were included in the child support calculation as required by law."

but his supposed opposition to paying me child support in an amount he agreed to pay is purely for the purpose of retribution by his Guardian ad Litem . . . ."

The hearing took place in May 2019. Galyon testified that father recently was diagnosed with Parkinson's and the onset of dementia. She testified that as a direct result of his diagnosis his daily living expenses had increased. She stated he specifically needed a visitation supervisor, a $400-per-hour guardian ad litem, a power of attorney to monitor and take charge of his finances, a caregiver, and a driver because his driving privileges were revoked for medical reasons. Galyon also testified father was required to pay for minor's counsel.

Mother did not object to Galyon's testimony. She testified that she signed her current apartment lease through July 31, 2019, in reliance on the $6,500 per month support order.

Father's counsel argued father's increased expenses constituted a change of circumstances. Mother's counsel argued Galyon's testimony was speculative or lacking in any factual basis (as to the costs of a professional supervisor and increase in medical costs) and irrelevant (as to costs of litigation, particularly minor's counsel). Counsel argued father's representative worked for free, the parties had no agreement for overnight visitation, and father did not produce receipts to support the existence of his new expenses. Father's counsel was unable to say whether father's power of attorney required compensation.

After considering the declarations, testimony and arguments of counsel, the family court modified the support order. It found there were material changed circumstances since the March 28, 2017 judgment to modify the parties' above-guideline child support order, "including that

5

[father's] medical condition (post-judgment diagnoses of Parkinson's and dementia) required the appointment of a Guardian ad Litem on February 27, 2019[,] and another third party with a financial power of attorney, and [father] now has increased expenses including supervised visitation, a guardian ad litem and advancing costs of minor's counsel." Using the DissoMaster computer program, it found guideline support was $3,307 per month. The court found "[b]ased on the foregoing circumstances and considering the best interest of the child, pursuant to [Family Code section] 4057[, subdivision] (b)(5) the court deviated upward and continued the current $6500 [per] month in child support through the month of July 2019, when [mother's] lease expired. Beyond July 2019, however, the court did not find that [mother] demonstrated by a preponderance of the evidence that guideline support is unjust or inappropriate under the circumstances of this case." The family court ordered father to pay guideline child support of $3,307 effective August 1, 2019, finding it was in the best interests of the child considering the parties' current circumstances.

The court provided only an oral statement of decision. It initially entered its findings and order after hearing in June 2019. In August 2019, mother filed a notice of appeal from that order. The court then entered amended findings and order after hearing in September 2019.[5]

---

[5] Father does not challenge the timing or sufficiency of mother's notice of appeal. Mother states the amended findings and order after hearing merely adds that the court provided an oral statement of decision in accord with its minute order. To the extent mother's notice of appeal is premature, we will deem it to have been filed on the date of the later-filed findings and order after hearing. (Accord, *In re J.F.* (2019) 39 Cal.App.5th 70, 75-76 [court must liberally construe notice of appeal in favor of its sufficiency as long as it is reasonably clear what appellant is appealing from]; *Williams v. Fremont Corners, Inc.* (2019) 37 Cal.App.5th 654, 662, fn. 2.)

## DISCUSSION

### I. *Claim of Inadequate Record*

We begin with father's claim that the record is inadequate for this court to review the family court's findings and order after hearing. He asserts the parties have been litigating a long time, pointing to the 15-page register of actions and the fact that mother includes only seven pleadings out of "hundreds . . . ." He argues the settled statement is deficient in that mother left blank a section in the Judicial Council form settled statement asking her to explain why the family court's order was not supported by substantial evidence; she did not list any errors of law or procedure; and she did not object to Galyon's testimony. According to father, this court should affirm the order given the presumption of correctness and mother's failure to provide a reasonable record.

We are not convinced by father's bare assertion that mother's record is inadequate because she included only seven pleadings out of many. The record includes father's request for order and Galyon's declaration in support, the parties' original stipulation and 2016 DissoMaster calculation, a 2019 DissoMaster calculation, father's income and expense declaration, mother's responsive declaration, mother's counsel's supporting declaration, mother's income and expense declaration, and mother's points and authorities in opposition to the request for order. Father does not explain and we see no reason why these pleadings are not enough for this court to assess the court's order on father's request to reduce his child support obligation.

Nor are we convinced that the settled statement is insufficient because mother did not fully fill out the Judicial Council form, which states it is "Approved for Optional Use." (See Judicial Council form APP-014; *In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 165 [discussing difference

7

between mandatory and optional judicial council forms].) Appellant could choose to use it but need not. A settled statement is "a summary of the superior court proceedings approved by the superior court." (Cal. Rules of Court, rule 8.137(a).) It must contain a statement of the points the appellant is raising on appeal, and a condensed narrative of the oral proceedings, including a concise factual summary of the evidence and the testimony of each witness relevant to the points that the appellant states are being raised on appeal. (Cal. Rules of Court, rule 8.137(d).) The purpose of a settled statement is not to provide evidence for the appellate record or detailed legal argument. It is " 'to ensure that the record transmitted to the reviewing court preserves and conforms to the proceedings actually undertaken in the trial court.' " (See *People v. Virgil* (2011) 51 Cal.4th 1210, 1266.)

The California Rules of Court require only that the party make a "statement of the points that . . . are being raised on appeal." Mother checked a box that "[t]here was no substantial evidence that supported the judgment or order that I am appealing." While mother did not further explain why the judgment was not supported by substantial evidence as the optional form APP-014 allows, her appellate brief seeks to provide that information. We conclude she provided the substance of what is called for in a settled statement. Because mother has given the information called for by the Rules of Court, we reject father's request that we apply the presumption of correctness and affirm based solely on the content of mother's record or the Judicial Council form settled statement.

## II. *Evidence of Material Change of Circumstances*

Pointing to the strong public policy in this state in favor of adequate child support, mother contends father did not meet his burden to demonstrate a material change of circumstances by showing his financial

8

status had changed so as to make him unable to pay the previously-stipulated $6,500 monthly amount. She advances four reasons why this is the case. First, mother argues the family court did not consider the fact that since 2017 father's gross income had increased by $3,283, while his time share had decreased from 49 percent to 2 percent, and thus, she maintains, he was in a better financial condition at the time he sought the modification. Second, she argues father's purported increase in expenses is not supported by substantial evidence; the new expenses were not identified in his income and expense declaration, and it was speculative whether his current expenses exceeded the increase in his net income. Third, mother argues father did not also present evidence of his expenses as of March 2017, and therefore he could not demonstrate any material change in expenses in 2019. Fourth, according to mother, the family court did not consider father's assets and wealth, which shows he had "hundreds of thousands of dollars to meet any alleged shortfall" and that it should have considered he could tap into capital rather than shift the costs onto her and their child.

A. *Legal Principles and Standard of Review*

This court summarized the public policy regarding child support and relevant standard of review in *In re Marriage of Sorge*, *supra*, 202 Cal.App.4th 626: " 'California has a strong public policy in favor of adequate child support. [Citations.] That policy is expressed in statutes embodying the statewide uniform child support guideline. (See [Fam. Code, §§] 4050-4076.) "The guideline seeks to place the interests of children as the state's top priority." ([Fam. Code,] § 4053, subd. (e).) In setting guideline support, the courts are required to adhere to certain principles, including these: "A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." ([Fam. Code,]

9

§ 4053, subd. (a).) "Each parent should pay for the support of the children according to his or her ability." ([Fam. Code,] § 4053, subd. (d).) "Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children." ([Fam. Code,] § 4053, subd. (f).)' " (*Sorge*, at p. 640; see also *County of San Diego Dept. of Child Support Services v. C.A.* (2019) 34 Cal.App.5th 614, 620; *Usher, supra,* 6 Cal.App.5th at p. 356.)

Subject to exceptions, "a support order may be modified or terminated at any time as the court determines to be necessary." (Fam. Code, § 3651, subd. (a); *In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 528.) "The party seeking to modify a child support order usually must show there has been a material change in circumstances since entry of the last support order. [Citation.] In determining whether a material change has occurred, the first step often involves applying the statewide uniform guideline to the parent's current financial circumstances. [Citation.] Thus, an increase or decrease in either parent's income available for child support will affect the guideline amount of child support and, thus, may constitute a material change in circumstances justifying a modification of child support. [Citation.] Where the statewide statutory formula for child support is being met, the next step in determining whether a material change has occurred ' "is made on a case-by-case basis and may properly rest on fluctuations in *need* or *ability to pay*." ' " (*Hein*, at pp. 528-529.) There are no rigid guidelines for evaluating changed circumstances, but the focus is generally on whether there has been a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported party's needs. (*Usher, supra,* 6 Cal.App.5th at p. 358.) The overriding issue is whether a change has affected

10

either party's financial status. (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1015.)

" 'The standard of review for an order modifying a child support order is well established. "[A] determination regarding a request for modification of a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below." [Citations.] Thus, "[t]he ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court. [Citation.] The reviewing court will resolve any conflicts in the evidence in favor of the trial court's determination. [Citation.]" [Citation.]' [Citation.] [¶] However, 'the trial court has "a duty to exercise an informed and considered discretion with respect to the [parent's child] support obligation . . . ." [Citation.] "Furthermore, in reviewing child support orders we must also recognize that determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule. [Citations.]" [Citation.] In short, the trial court's discretion is not so broad that it "may ignore or contravene the purposes of the law regarding . . . child support. [Citations.]" [Citation.]' " (*In re Marriage of Sorge, supra,* 202 Cal.App.4th at p. 640.) Applying this standard, we may consider " 'whether the court's factual determinations are supported by substantial evidence . . . .' " (*In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 527; accord, *Usher, supra,* 6 Cal.App.5th at p. 358 [an abuse of discretion will occur when a court modifies a support order without substantial evidence of a material change of circumstances].) But we do not substitute our judgment for that of the trial court, and " 'confine ourselves to determining whether any judge could have reasonably made the challenged

11

order.' " (*Macilwaine*, at p. 527; *In re Marriage of De Guigne* (2002) 97 Cal.App.4th 1353, 1360; see also *In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327.)

B. *Mother's Forfeited Arguments*

An "appeal is . . . limited to the points identified in the [settled] statement unless the reviewing court determines that the record permits the full consideration of another point." (Cal. Rules of Court, rule 8.137(d)(1).) Further, theories not properly raised below or presented in the trial court may not be asserted on appeal. (*Iliff v. Dustrud* (2003) 107 Cal.App.4th 1201, 1206; *In re Marriage of King* (2000) 80 Cal.App.4th 92, 117.) While there is an exception to the latter rule for questions of law applied to undisputed facts (*In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1303, fn. 15), that exception does not apply here. Nor is there an important issue of public policy implicated in this appeal. (Compare, *ibid.*)

These principles require us to hold that mother has forfeited some of the above contentions because they were not raised below, nor do they appear expressly or inferentially in the parties' settled statement. These arguments are that (1) father's current income and expense declaration did not reflect the new increased expenses; and (2) father did not establish the amount of his 2017 expenses so as to permit the court to compare those with his present expenses. Mother's failure to raise these points deprived father of the opportunity to respond to them and the trial court of the opportunity to consider them. (*Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1013, citing *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.)

Even setting aside mother's forfeiture, we would conclude mother's challenges to the omission of 2017 expenses or current expenses in father's

12

income and expense declaration raise issues going to the weight or credibility of the evidence, a matter not within this court's province on appeal. (*In re Marriage of Calcaterra and Badakhsh* (2005) 132 Cal.App.4th 28, 34 [" 'We do not reweigh the evidence or reconsider credibility determinations' "].) This is so because father's showing did not rest solely on his income and expense declaration, but also on the unchallenged sworn testimony from his guardian ad litem Galyon, which we conclude below was sufficient to support the court's order. If mother believed Galyon's testimony was without foundation, speculative, or inconsistent with father's income and expense declaration, she should have asserted timely objections to it on those particular grounds in her opposing papers or at the hearing below when Galyon was testifying.

C. *There is Substantial Evidence of a Material Change in Circumstances Permitting a Downward Departure to Guideline Child Support*

As we have summarized above, the parties' settled statement reflects unchallenged sworn testimony by Galyon that due to father's diagnosed Parkinson's Disease and onset of dementia (the latter conceded by mother in her responding papers below), his daily living expenses had increased for specified services. Though Galyon did not detail the amounts apart from the $400 per hour guardian ad litem fee or base her testimony on any exhibits or other documentary evidence, it was enough that she testified father's expenses had increased for the guardian ad litem services, a caregiver and driver, a visitation monitor, and an individual to exercise power of attorney over father's finances. Mother's appellate briefs do not cite authority showing father must produce bills or invoices in order to demonstrate a material change in his financial circumstances, when sufficient evidence is before the court of the type or nature of his expenses due to recently diagnosed serious health conditions. We are required to consider this evidence in the light most

13

favorable to support rather than defeat the court's order on father's request for modification (*Petersen v. Petersen* (1972) 24 Cal.App.3d 201, 206) and must "give [father] the benefit of every reasonable inference." (*In re Marriage of Calcaterra and Badakhsh, supra*, 132 Cal.App.4th at p. 34.) On our review for substantial evidence, we accept as true all evidence tending to establish the correctness of the family court's findings, resolving any conflicts in favor of father as the prevailing party. The testimony of a single witness is sufficient to provide substantial evidence to support a finding of fact. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614; *In re Marriage of Wozniak* (2020) 59 Cal.App.5th 120, 135.)

It is reasonable to infer based on father's medical conditions, the nature of the services, and Galyon's statement that they were increasing "dramatically" and being incurred "daily," that father's new expenses are significant. Any vagueness or lack of detail goes to the weight or credibility of the evidence, matters outside the province of this court. (*In re Marriage of Calcaterra and Badakhsh*, *supra*, 132 Cal.App.4th at p. 34 [" 'We do not reweigh the evidence or reconsider credibility determinations' "]; see also *In re Teel's Estate* (1944) 25 Cal.2d 520, 526 ["The trier of fact is the sole judge of the credibility and weight of the evidence"]; *In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 500.) From this showing, the family court made an express finding that father had established changed financial circumstances, the necessary factual predicate to a downward modification from higher-than-guideline support to guideline child support. Mother does not challenge the family court's calculation of the guideline amount of support at $3,307, so we do not reach that question.

We are not convinced by mother's claim that the family court failed to consider father's increased income or decreased visitation, or father's assets

14

and wealth. Father's 2017 and 2019 income and expense declarations, as well as the DissoMaster calculations, appear in the record and were before the court, and we presume the court considered them where the record is silent on the matter. (*In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8 [lower court's order is presumed correct; all intendments and presumptions are indulged to support it on matters as to which the record is silent and error must be affirmatively shown].)

On this limited record, we hold the evidence supports the conclusion that a change has affected father's financial status (*Usher, supra*, 6 Cal.App.5th at p. 358), permitting the family court to order a downward modification of child support to the guideline amount. We cannot say that considering all the evidence viewed most favorably in support of the order, no judge could have reasonably made it. (*In re Marriage of Macilwaine, supra*, 26 Cal.App.5th at p. 527.) The trial court did not abuse its discretion.

### III. *Evidence of Child's Financial Needs*

Mother further contends there is a fifth reason why insufficient evidence supports the order. She maintains father did not prove their child's financial needs had diminished as assertedly required by *Usher, supra*, 6 Cal.App.5th 347. According to mother, because she and father agreed the previous $6,500 monthly support amount met their child's needs, father bore a burden of proving the child's financial needs had diminished, which he did not and could not do because the evidence showed their child would be ejected from mother's home due to the reduced support order. Mother maintains the order will result in a reduction of the child's standard of living as in *Usher*, making the court's downward modification of support an abuse of discretion.

Again, the record reflects no such argument was made in response to father's request for order below. Mother's points and authorities in

15

opposition to father's request relied mainly on *Marriage of Laudeman*, *supra*, 92 Cal.App.4th 1009, a case in which the Court of Appeal reversed a downward modification order of above-guideline support because the order was based not on material changed circumstances, but on father's bare claim that "he had agreed to pay more than the guideline amount." (*Id*. at pp. 1011, 1016.) Here, mother's argument as reflected in the settled statement was merely that she had signed her apartment lease through July 31, 2019, in reliance on the above-guideline support. The settled statement does not indicate that Mother relied on *Usher*, *supra*, 6 Cal.App.5th 347, argued that father was an extraordinarily high earner, or addressed the issue of father's asserted burden to show their child's needs had diminished. This precludes mother from making the argument for the first time on appeal. (Cal. Rules of Court, rule 8.137(d)(1).)

Mother points out her declaration filed in opposition to father's request for order stated that when she and father negotiated the original child support order, her position was that $6,500 was in the child's best interests to maintain his standard of living, which "includes a rental home in Carmel Valley (in [the child's] school district) as well as extensive international travel." She characterizes this as evidence the guideline order would require the child to move from mother's home. But the record contains no evidence of the cost of mother's rental home (compare *Usher*, *supra*, 6 Cal.App.5th at p. 351), or evidence there were no other rental options in the child's school district such that the guideline support would disrupt the child's life by requiring them to move from their neighborhood. (*Id*. at p. 361.)

*Usher* is inapposite in any event. It is a case of an extraordinarily high earner parent who claimed a change in circumstance had occurred by a reduction in his monthly income from $350,000 to about $140,000. (*Usher*,

16

*supra*, 6 Cal.App.5th at pp. 355, 359.)  The Court of Appeal held the respondent presented no evidence of a substantial change in his financial ability to pay or a cutback in his own lifestyle; he had $34 million in liquid assets and had moved from a $2.1 million residence into a $19.2 million home, while maintaining a $6.6 million Italian vacation home.  (*Id*. at p. 359.)  Given the respondent's substantial wealth, the appellate court in *Usher* held his paying the parties' originally agreed-upon $17,500 per month in support would not materially impact his net worth.  (*Id*. at pp. 350, 355, 359.)  The court stated it was incorrect that a reduction in income standing alone constituted a sufficient change in circumstances given the respondent's "substantial assets" and wealth.  (*Id*. at pp. 359-360.)  The *Usher* court's discussion of respondent's burden to prove the child's reduced financial needs came in response to his attempt to shift the burden to the *appellant* to establish the reduced support award would require their child to live at a reduced level.  (*Id*. at pp. 360-361.)  The court made clear that with a wealthy parent, a child's historic expenses did not define need, which was measured by the parents' current station in life.  (*Id*. at p. 361.)  Appellant had in any event presented uncontested evidence that the reduced support would result in a reduction of the child's standard of living.  (*Ibid*.)  The Court of Appeal concluded the family court erred by reducing child support without substantial evidence of a material change in the respondent's ability to pay, his standard of living, or the amount needed for the child to maintain a lifestyle commensurate with his own and which respondent had agreed was in the child's best interest.  (*Ibid*.)  Rather, in light of the respondent's "overall wealth, the reduction in his employment income did not materially impair his ability to pay the agreed upon child support."  (*Id*. at p. 350.)

Mother argues that *Usher* stands for the proposition that "when there is an attempt to deviate from a previous non-guideline order, the moving party must prove the child's needs have decreased." But *Usher* does not change the material changed circumstances test for a parent seeking to modify an above-guideline child custody order. (*Usher, supra*, 6 Cal.App.5th at pp. 357-358.) A reduction in a child's needs might be one type of change in circumstances, but father in this case did not try to argue that his child's needs were reduced or would be adequately met by reduced support as the respondent did in *Usher*. *Usher*'s point is that when a party seeking modification makes such an argument it is that party's burden to prove it.

While father in this case has a comfortable income based on his pension, social security and investment income, the record permitted the family court to conclude he is not such an extraordinarily high earner to render irrelevant his substantial increased medical and other expenses due to his serious adverse health conditions, or to require an assessment of the child's needs primarily based on wealth or " ' "the parents' current station in life." ' " (*S.P. v. F.G., supra*, 4 Cal.App.5th at p. 931; *In re Marriage of Macilwaine, supra*, 26 Cal.App.5th at p. 536 [discussing how to determine "needs" of a child with an extraordinarily high earner parent].) And, unlike the extraordinarily wealthy respondent in *Usher*, father in this case via Galyon's testimony presented substantial evidence of changed financial circumstances so as to warrant a modification to guideline child support. *Usher* does not compel us to conclude the family court abused its discretion in modifying the child support order in this case to the presumptively correct guideline level.

DISPOSITION

The order is affirmed.


                                                        O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.